**TEXAS EDUCATION AGENCY
et al., Petitioners,**

v.

**Gary W. LEEPER et ux.
et al., Respondents.**

No. D–2022.

Supreme Court of Texas.

June 15, 1994.

Rehearing Overruled March 16, 1995.

Opinion by Justice Gonzalez Concurring
in Part and Dissenting in Part on
Rehearing filed March 16, 1995.

Janet Little Horton, Houston, S. Anthony Safi, El Paso, John Owens, Dan Morales and James C. Todd, Austin, for petitioners.

Chester G. Ball, Arlington, J. Shelby Sharpe, Fort Worth, Morris Harrell, Dallas, John W. Whitehead, Charlottesville, VA, for respondents.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, DOGGETT, CORNYN, GAMMAGE, ENOCH and SPECTOR, Justices, join, and in Parts I, II and III of which GONZALEZ, Justice, joins.

All school-age children in Texas are required to attend public schools a minimum number of days each year unless exempted by law. Tex.Educ.Code § 21.032. Among those exempt from this requirement is "any child in attendance upon a private or parochial school which shall include in its course a study of good citizenship". *Id.*

§ 21.033(a)(1). The dispute in this class action centers on whether the private school exemption includes children who are taught at home, in a bona fide manner, a curriculum designed to meet certain basic education goals, including a study of good citizenship. The district court construed the exemption to include such children and permanently enjoined all school districts and their attendance officers from enforcing the compulsory attendance law based upon any other reading of § 21.033(a)(1). The district court also awarded attorney fees. The court of appeals affirmed. 843 S.W.2d 41.

The relative merits of home schooling and public education are currently the subject of a vigorous and sometimes emotional debate in which the legal issues we address here do not require us to take part. We agree that Texas law does not require children who are taught in legitimate home schools to attend public schools. We therefore affirm the lower courts' construction of § 21.033(a)(1) and the award of attorney fees. The State has charged a number of parents who educate their children at home with criminal violations of the compulsory attendance law. The district court enjoined all further such prosecutions not based upon a proper construction of the private school exemption. We conclude, however, that a permanent injunction against school districts and their agents is unwarranted, as there is no showing that school officials will refuse to abide by our decision in this case. Accordingly, we reverse the injunctive portion of the lower courts' judgments.

I

A

The important features of the historical backdrop to this litigation are not among the issues in dispute and may be described as follows.

At the beginning of this century the public school system of Texas was not well developed. No more than ten percent of school-age children attended public schools, accord-

ing to the uncontradicted evidence at trial, and as there were few private and parochial schools in the State, many children were taught at home.

Public school attendance was not mandatory in Texas until 1916. The first compulsory attendance law, enacted the prior year, required children between eight and fourteen years of age to attend public school for 60 days during the 1916–1917 school year, 80 days the following year, and 100 days each year afterward. Act of March 8, 1915, 34th Leg., R.S., ch. 49, § 1, 1915 Tex.Gen.Laws 92, 93. Parents (and persons acting as parents) were responsible for assuring that children complied. *Id.* § 9, at 96–97. Failure to discharge this responsibility was a misdemeanor punishable by a fine, unless the person in the parental role could not control the child. *Id.* A child who refused to attend school could be disciplined by the juvenile court as a habitual truant. *Id.* The statute authorized appointment of attendance officers to enforce its provisions. *Id.* §§ 6–7, at 94–95.

Over the years the details of these statutory provisions have changed, but the basic structure remains in place.[1] Now children from about six to seventeen years of age must attend public school at least 170 days each school term. TEX.EDUC.CODE § 21.032(a).[2] A parent or person in that role who has been warned in writing to require a child to comply with the compulsory attendance law, and who fails to do so, may be fined, and a child's refusal to attend school may be sanctioned by the juvenile court. *Id.* § 4.25(a)-(b);[3] TEX.FAM.CODE

1. Present statutes omit one significant provision of the 1915 law: "Any child within the compulsory school attendance ages who shall be insubodinate [sic], disorderly, vicious or immoral in conduct, or who persistently violates the reasonable rules and regulations of the school which he attends, or who otherwise persistently misbehaves therein so as to render himself an incorrigible, shall be reported to the person exercising the duties of attendance officer of said school, who shall proceed against such child in the juvenile court as herein provided." Act of March 8, 1915, 34th Leg., R.S., ch. 49, § 9, 1915 Tex.Gen. Laws 92, 97.

2. "Unless specifically exempted by Section 21.033 of this code or under other laws or unless a child is at least 17 years of age and has been issued a high school equivalency certificate, every child in the state who is as much as six years of age, or who is less than seven years of age and has previously been enrolled in first grade, and who has not completed the academic year in which his 17th birthday occurred shall be required to attend the public schools in the district of his residence or in some other district to which he may be transferred as provided or authorized by law a minimum of 170 days of the regular school term of the district in which the child resides or to which he has been transferred."

3. Until 1993, § 4.25 provided as follows:

(a) If any parent or person standing in parental relation to a child, within the compulsory school attendance ages and not lawfully exempt or properly excused from school attendance, fails to require such child to attend school for such periods as required by law, it shall be the duty of the proper attendance officer to warn, in writing, the parent or person standing in parental relation that attendance must be immediately required. If after this warning the parent or person standing in parental relation intentionally, knowingly, recklessly, or with criminal negligence fails to require the child to attend school as required by law, the parent or person standing in parental relation commits an offense. The attendance officer shall file a complaint against him in the county court, in the justice court of his resident precinct, or in the municipal court of the municipality in which he resides or in the municipality or justice of the peace precinct in which the school is located. In addition, if the child has been voluntarily absent from school for 10 or more days or parts of days within a six-month period or three or more days or parts of days within a four-week period without the consent of his parents, the attendance officer shall refer the child to the county juvenile probation department for action as conduct indicating a need for supervision under Section 51.03(b), Family Code. A court in which a complaint is filed under this subsection shall give preference to a hearing on the complaint over other cases before the court. An offense under this section is punishable by a fine of not less than $5 nor more than $25 for the first offense, not less than $10 nor more than $50 for the second offense, and not less than $25 nor more than $100 for a subsequent offense. Each day the child remains out of school after the warning has been given or the child ordered to school by the juvenile court may constitute a separate offense. If the court probates the sentence, the court may require

§ 51.03(b)(2).[4] Each day a child is absent after warning is given or attendance is ordered is a separate offense. TEX.EDUC.CODE § 4.25(a). Also, a parent's rights in a child may be terminated if the parent fails to enroll a child in public school as required by law. TEX.FAM.CODE § 15.02(a)(1)(J)(i).[5]

The first compulsory attendance statute exempted several classes of children from compliance, including "[a]ny child in attendance upon a private or parochial school or who is being properly instructed by a private tutor." Act of March 8, 1915, 34th Leg., R.S., ch. 49, § 2(a), 1915 Tex.Gen.Laws 92, 93. This provision was amended in 1923 to add two requirements for private and parochial schools and to remove the reference to private tutors, so that the statute was changed to exempt:

> Any child in attendance upon a private or parochial school which shall include in its course a study of good citizenship, and shall make the English language the basis of instruction in all subjects....

Act approved March 23, 1923, 38th Leg., R.S., ch. 121, § 2, 1923 Tex.Gen.Laws 255, 255. At the time, according to all the evidence presented in this case, a child pursuing a bona fide course of study at home designed to meet the basic education goals of reading, spelling, grammar, mathematics and good citizenship was considered to be attending a private school. Thus, the 1923 amendment

to the exemption, omitting the reference to private tutors, did not affect children schooled at home. The only other times the exemption was amended was in 1969 and 1971, when the English language restriction was first moved and then dropped. See Act of May 7, 1969, 61st Leg., R.S., ch. 289, § 1–3, 1969 Tex.Gen.Laws 871, 871; Act of May 20, 1971, 62nd Leg., R.S., ch. 405, § 40, 1971 Tex.Gen.Laws 1449, 1513. The exemption, as we noted at the outset, is now codified as § 21.033(a)(1), TEX.EDUC.CODE.

Enactment of the compulsory attendance law in 1915 did not end home schooling; some children continued to be educated at home just as they had before. The important fact, for purposes of analysis of the legal issues before us, is that some school-age children have been educated at home since before the compulsory attendance law was passed in 1915, and the State never attempted to prohibit or even restrict home schooling, or to allege a violation of the compulsory attendance law based solely on a child's being taught at home, until 1981.

That year, a staff attorney for the Texas Education Agency advised an assistant superintendent for one school district that "home instruction is not one of the enumerated exemptions" to the compulsory attendance law.[6] He added:

> In order to avoid the sanctions of compulsory attendance, home instruction would,

---

the defendant to render personal services to a charitable or educational institution as a condition of probation.

(b) It is a defense to prosecution under Subsection (a) of this section that the parent or person standing in parental relation to the child is unable to compel the child to attend school.

In 1993, there were three amendments, each without reference to the others, to this version of § 4.25. See Act of May 18, 1993, 73rd Leg., R.S., ch. 358, § 2, 1993 Tex.Gen.Laws 1528, 1629–30; Act of May 28, 1993, 73rd Leg., R.S., ch. 347, § 6.01, 1993 Tex.Gen.Laws 1479, 1527–28; Act of May 29, 1993, 73rd Leg., R.S., ch. 930, § 1, 1993 Tex.Gen.Laws 3949, 3950. None of these amendments are important to the issues in this case.

4. "Conduct indicating a need for supervision is ... the unexcused voluntary absence of a child on 10 or more days or parts of days within a six-month period or three or more days or parts of days within a four-week period from school without the consent of his parents...."

5. "[A] petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that ... the parent has ... been the major cause of ... the failure of the child to be enrolled in school as required by the Texas Education Code...."

6. The Texas Education Agency is actually the Central Education Agency, which is composed of the State Board of Education, the State Board for Vocational Education, the commissioner of

most likely, have to be qualified as a private school. Unfortunately, there are no provisions in the law which define a private school for these purposes.

... [A]s a result of the present status of the law and as a result of the general absence of legislative guidance in this area, school districts and parents alike would be well advised to proceed with caution in this area. In light of all this confusion, it would appear that the courts would be the proper forms [sic] in which to evaluate any particular home study situation as a prospective exemption from compulsory attendance.

The following year the TEA's assistant general counsel expressed an even stronger position in response to an inquiry by parents considering home schooling:

The compulsory student attendance laws of the State of Texas do not permit students to be taught at home.... The exemption statute provides that a child in attendance upon a private or parochial school which shall include in its course a study of good citizenship is exempt from the requirements of compulsory attendance. There is no exemption for home tutorial programs.

... A school, whether private, public, or parochial, must include retained and qualified teachers; a collection of students from different families; a curriculum that includes the basic academics as are taught in public schools; and some organizational structure that assures that instruction does, in fact, occur.

The continuous policy of this office is based upon much more than a cursory review of the statutes. All of our legal research concludes that a person may not teach their children at home simply by calling their home a private school. If educational programs conducted in a home environment are to be allowed as exemption to the compulsory attendance law, action of the Legislature will be required.

The Legislature took no action, although a number of bills were introduced in 1985.[7] That same year, the Texas Education Agency issued a publication entitled HOUSE BILL 72 AND SUBSEQUENT EDUCATIONAL LEGISLATION: COMPREHENSIVE REFERENCES AND EXPLANATIONS, which included a section devoted to the compulsory attendance law, even though that law was not affected by House Bill 72 or any subsequent educational legislation. For the first time, the TEA published its interpretation of the private school exemption:

It is the agency's interpretation that under this compulsory attendance law, private school attendance is an acceptable substitute for public school attendance. However, educating a child at home is not the same as private school instruction and, therefore, not an acceptable substitute.

If a school district knows of a situation in which a school age student is not being educated in compliance with compulsory attendance statutes, the district should file charges against the parent under the compulsory attendance law.

---

education, and the State Department of Education. TEX.EDUC.CODE § 11.01. The State Board of Education and the State Board for Vocational Education are identical. *Id.* § 11.24. The SBOE, which has fifteen members elected from districts in the state, is responsible for implementing legislative policy for the public school system. *Id.* §§ 11.2101, 11.24. The commissioner of education is the executive officer of the TEA and the SBOE. *Id.* §§ 11.25, 11.52. The State Department of Education is the professional, technical and clerical staff of the TEA. *Id.* § 11.61.

7. Tex.H.B. 29, 69th Leg., R.S. (1985) (requiring home educators to register, provide at least 170

days of instruction, and maintain attendance and immunization records, and requiring students not to score below the district average on annual tests); Tex.H.B. 431, 69th Leg., R.S. (1985) (exempting persons from compulsory attendance law based upon sincerely held religious belief); Tex.H.B. 673, 69th Leg., R.S. (1985) (exempting children schooled by parents from compulsory attendance law). None of these bills were reported out of committee. House Bill 317, which attempted to amend § 4.25(a) of the Education Code by removing parents and guardians of home schooled students from the class of individuals subject to criminal sanctions for violating the compulsory attendance law, was reported out

Correspondence courses are not a legal substitute for attendance at a public or private school.

TEX.EDUC.AGENCY, HOUSE BILL 72 AND SUBSEQUENT EDUCATIONAL LEGISLATION: COMPREHENSIVE REFERENCES AND EXPLANATIONS 213 (1985).

Although the Commissioner of Education testified that the TEA never changed its policy refusing to exempt home schooled students from the compulsory attendance law, the fact remains that there is no evidence of such policy prior to 1981. Nor were the policy statements from 1981–1985 made after hearings or other proceedings before the TEA. Most importantly, the TEA itself now concedes in its briefs and oral argument before this Court that its interpretation of the private school exemption, beginning in 1981 and restated in its 1985 publication, was "anomalous".

**B**

Based upon the TEA's policy statements from 1981–1985, school districts and their attendance officers began prosecuting violations of the compulsory attendance law based upon nothing other than the fact that a child was being schooled at home. In all, some 150 prosecutions were initiated, and about 80 of them were actually tried. The State's position in those prosecutions was that a home school was never a private school within the meaning of the statutory exemption, § 21.033(a)(1), and never exempt from the compulsory attendance law.

To halt the State's enforcement of this policy, this class action was filed in March 1985. The district court certified three plaintiff classes: one comprised of parents, another of private schools who furnish curricula for home schools, and the third of other providers of home school curricula. Specifically, the district court defined the first class as those parents—

who either [a] have enrolled their school-age children in private or parochial schools outside their homes receiving the curricula and instruction of these schools in their homes which includes in the course a study of good citizenship or [b] have established a private school in their homes which involves in its course a study of good citizenship.

Nine married couples with school-age children were named as representatives of the class.[8] Two of the couples had been prosecuted for violating the compulsory attendance law, based upon the TEA's 1981 policy, and two others had been threatened with prosecution.[9] The second class included the Calvert School, Inc., the First Baptist Academy of Dallas, Christian Liberty Academy Satellite Schools, and others "who have established private or parochial schools where the students receive their curricula including a study of good citizenship and instruction in their homes." The third class consisted of Reform Publications, Inc. d/b/a Basic Education, American Christian Schools, Inc., and others "who provide curricula including in their courses a study of good citizenship and instruction for private schools in homes." The Home School Legal Defense Association was named as an individual plaintiff.

The district court also certified a defendant class comprised of all "public school districts and their school attendance officers", represented by three such districts and officers.[10] Besides this class, there were

---

of committee but defeated on the House floor, apparently for fear that the provision would establish a precedent for regulation of home schools. Tex.H.B. 317, 69th Leg., R.S. (1985).

8. The class representatives were Gary W. and Cheryl Leeper, Bruce and Patricia Smythe, Calvin E. and Wanda Minkler, Quinten T. and Sandra Parten Jr., Tony and Suzanne Martinez, Charles and Corlee Kent, John W. and Helen

Jackson Jr., Michael R. and Sally K. Galbraith, and Richard and Kay Wells.

9. The Galbraiths and Wells were actually prosecuted; the Leepers and Minklers received letters from school officials threatening prosecution.

10. Named as representatives of the defendant class were the Arlington Independent School District and its attendance officer, Max Kidd; the Katy Independent School District and its attend-

four named defendants: the TEA; the Texas Commissioner of Education; the Assistant General Council of the TEA; and the Attorney General of Texas.

Plaintiffs contended that defendants had misinterpreted the private school exemption and sought a declaration to that effect under the Declaratory Judgments Act, TEX.CIV. PRAC. & REM.CODE §§ 37.001–.011. Plaintiffs also claimed that defendants' enforcement of the compulsory attendance law infringed upon their constitutional rights, in violation of the federal Civil Rights Act, 42 U.S.C. § 1983. Plaintiffs sought an injunction prohibiting all school districts and attendance officers from enforcing the compulsory attendance law against bona fide home schools. Plaintiffs also claimed attorney fees.

Consistent with the TEA's 1985 statement of policy, the Attorney General in his original answer in this suit specifically denied that a home school could be a private school within the meaning of § 21.033(a)(1). No other defendant adopted this position, however, and the Attorney General himself abandoned it in later pleadings. About a year after the suit was filed, on April 12, 1986, the State Board of Education issued a resolution calling upon the Legislature to define the private and parochial school exemption and recommending that school districts follow new standards in applying the exemption pending legislative action.[11] That resolution stated:

> WHEREAS the State Board of Education has been requested by various parties to define the terms "private or parochial school" as contained in Article 21.033 of the Texas Education Code; and
>
> WHEREAS the legal authority of the State Board of Education to make such definition has been questioned by various entities, including, we are advised, the Texas Legislative Council;
>
> NOW, THEREFORE, the State Board of Education urges the Texas Legislature either to define such terms or specifically to

authorize the State Board of Education to do so at its regular session in 1987.

> The State Board of Education further recommends to the various school districts of Texas that the following guidelines may be utilized in determining whether an entity is a private or parochial school for the purposes of Article 21.033 pending the action of the Texas legislature:
>
> (1) An entity that is accredited by an accrediting organization recognized by the Commissioner of Education, or
>
> (2) An entity that meets the following criteria:
>
> a. It instructs students in facilities that comply with applicable local fire and sanitation codes;
>
> b. It has a written regular plan of instruction sufficient to meet basic student educational goals;
>
> c. Its students shall annually be administered a recognized nationally norm-referenced standard achievement test. Evidence of such administration and the results thereof shall be furnished upon request to the attendance officer for the public school district in which the private or parochial school is located. The local school district may require that the next administration of such achievement test be by qualified test administrator, or
>
> (3) An entity that furnishes evidence satisfactory to the attendance officer of the school district in which the private or parochial school is located, that it meets the criteria required by the Commissioner of Education for an entity to be accredited by a recognized accrediting organization under (1) of this section.
>
> The above guidelines will not be interpreted in such a manner as to interfere with the exercise of religious freedom guaranteed by the United States and Texas Constitutions.

ance officer, Helena Blackstock; and the El Paso Independent School District and its attendance officer, Charles F. Hart.

---

**11.** As noted above, *supra* n. 6, the SBOE is the component of the TEA charged with implementing legislative policy.

Defendants contended that the 1986 resolution—to which the Legislature chose not to respond—mooted plaintiffs' complaints, for reasons we consider in detail below. The district court rejected this contention.

Shortly after the SBOE issued the 1986 resolution, the parties to this action notified the members of the various classes that they had reached agreement concerning the proper construction of § 21.033(a)(1). That construction was to be effectuated by an agreed interlocutory judgment of the district court which provided in part as follows:

> Accordingly, the Court declares that a school-aged child residing in the State of Texas who is regularly and diligently pursuing in the child's home a written curriculum of either a private or parochial school in which the child is enrolled which exists apart from the child's home or which has been obtained from other sources, said curriculum following a regular plan of instruction designed to meet basic educational goals of reading, language arts, mathematics and a study of good citizenship, is considered to be in attendance upon a private or parochial school within the meaning of [§ 21.033(a)(1)]. The Court further finds that the current curricula of [the named representatives of the second and third plaintiff classes] are written curricula following a regular plan of instruction designed to meet basic educational goals of reading, language arts, mathematics and a study of good citizenship. This finding is made so that the school attendance officers of the public school districts in the State of Texas will be able to identify a curriculum for a school-aged child at home who is considered to be in attendance upon a private or parochial school. The Court also finds that if parents or those standing in the parental relationship to such a child furnish to any public school attendance officer upon his written request the results of a nationally normed standard achievement test which was given in accordance with the instructions accompanying the test and was taken within the preceding twelve (12) months of the written request showing that the child is making reasonable academic progress for that child, then this furnishing shall establish that the child is regularly and diligently pursuing the curriculum being taken.

The agreement did not encompass plaintiffs' claims for injunctive relief, damages and attorney fees. In response to the notice to the classes, a number of members of the first class of plaintiffs appeared before the district court and objected to the proposed agreed judgment. Consequently, the named plaintiffs withdrew from the agreement, and the proposed judgment was never presented to the district court.

Following trial before the bench, the district court rendered judgment in favor of plaintiffs. One portion of that judgment declared the proper construction of the private school exemption in § 21.033(a)(1). We quote the district court's declaration, inserting divisions among its components:

a school-age child

- residing in the State of Texas who is pursuing under the direction of a parent or parents or one standing in parental authority in or through the child's home

- in a bona fide (good faith, not a sham or subterfuge) manner

- a curriculum consisting of books, workbooks, other written materials, including that which appears on an electronic screen of either a computer or video tape monitor, or any combination of the preceding from either (1) of a private or parochial school which exists apart from the child's home or (2) which has been developed or obtained from any source,

- said curriculum designed to meet basic education goals of reading, spelling, grammar, mathematics and a study of good citizenship,

is in attendance upon a private or parochial school within the meaning of Section 21.033(a)(1) of the Texas Education Code and exempt from the requirements of compulsory attendance at a public school.

The court's judgment further provided:

This judgment does not preclude the Texas Education Agency, the Commissioner of Education or the State Board of Education from suggesting to the public school attendance officers lawful methods, including but not limited to inquiry concerning curricula and standardized test scores, in order to ascertain if there is compliance with the declaration contained in this judgment. · However, this judgment is not to be interpreted as requiring standardized tests in order for there to be compliance with the interpretation made by the court of [§ 21.033(a)(1)]. The lawful powers of investigation by public school attendance officers and the constitutional rights of persons subject to such investigations are not affected by this judgment.

This construction of § 21.033(a)(1), and the use of standardized tests as one indicia of compliance, are essentially the same provisions to which the parties agreed prior to trial before plaintiffs withdrew their consent.

The district court also held that children of the named representatives of the parent class and children studying materials provided by the named plaintiff institutions at home in a bona fide manner were exempt from the compulsory attendance law. The district court determined that any enforcement of the policy in the 1985 publication or the recommendation in the 1986 resolution would violate plaintiffs' due process and equal protection rights under the United States and Texas Constitutions. The court permanently enjoined all school districts and attendance officers from initiating charges of violations of the compulsory attendance law based upon any construction of § 21.033(a)(1) other than that contained in the court's declaratory judgment. Finally, the court awarded plaintiffs attorney fees against the school districts, but not against any of the other defendants.

The court of appeals concluded that plaintiffs were not entitled to relief under the state declaratory judgments act because the compulsory attendance law is penal. 843 S.W.2d at 48. The court based this conclusion on the rule that the constitutionality of a criminal statute cannot be determined, and its enforcement enjoined, in a civil proceeding absent a showing of irreparable injury to plaintiffs' property rights, which has not been attempted in this case. *Id.*; *see State v. Morales*, 869 S.W.2d 941 (Tex.1994). The court did not explain why this rule should apply to the private school exemption in § 21.033(a)(1), which is a civil statute distinct from the enforcement provisions of § 4.25, or why the rule should preclude a construction of § 21.033(a)(1) without reference to its constitutionality. The court of appeals did hold, however, that plaintiffs had demonstrated a violation of their constitutional rights to equal protection, and were therefore entitled to all the relief awarded by the district court under the federal Civil Rights Act. 843 S.W.2d at 48–51. In the course of its analysis the court concluded that the district court properly construed the private school exemption. *Id.* at 51–52.

We granted writ of error to review the correctness of the district court's construction of the private school exemption, the propriety of injunctive relief, and the award of attorney fees to plaintiffs.

## II

Before we turn to the central issues in the case, we must address three jurisdictional issues raised by defendants: whether plaintiffs' action was mooted by the SBOE's 1986 resolution; whether plaintiffs seek to construe and enjoin enforcement of a criminal statute over which a civil district court lacked jurisdiction; and whether the TEA's 1986 resolution regarding the private school exemption is an administrative rulemaking.

## A

■ Defendants contend that plaintiffs' complaints are directed against the TEA's 1985 policy statement which defendants now admit was "anomalous" and which the TEA has abandoned. Defendants argue that plaintiffs meet the standard the SBOE adopted in its 1986 resolution and thus can no longer complain of the TEA's enforcement of the compulsory attendance law.

Although there is language in the court of appeals' opinion to suggest that the named individual plaintiffs in the action would meet the standard adopted in the 1986 resolution, 843 S.W.2d at 51–52, the evidence does not bear this out. The first requirement of the 1986 resolution is that the facilities where students are instructed—*i.e.*, plaintiffs' homes—comply with applicable local fire and sanitation codes. There is no evidence that the nine couples named in the action instruct their children in homes that comply with applicable local fire and sanitation codes (or, for that matter, of what those codes require of homes). The third requirement of the 1986 resolution is that students be given nationally norm-referenced standard achievement tests annually. According to the evidence at trial, only one of the nine plaintiff couples met this requirement. Eight of the plaintiff parents testified that they had tested their children at least once, but two testified that they would not do so again because they know without tests how their children are progressing. There is no evidence whether one of the nine couples did or did not give their children achievement tests. Plaintiffs oppose making either of these factors—compliance with building codes or administration of achievement tests—essential to qualification for the private school exemption. With respect to the second requirement of the 1986 resolution—a written plan of instruction sufficient to meet basic student educational goals—plaintiffs agreed that some plan was important but that it did not always need to be written. Moreover, it is not clear whether plaintiffs and the TEA would agree on what are basic student educational goals.

In sum, plaintiffs and defendants do not agree on when home schooled children should be exempt from the compulsory attendance law. Plaintiffs contend that the 1986 resolution does not correctly construe § 21.033(a)(1); defendants disagree. A case is moot when there is no actual controversy between the parties. *City of West University Place v. Martin*, 132 Tex. 354, 123 S.W.2d 638, 639 (1939). The disagreement among the parties in this case is not academic or abstract; it is real and affects the rights and interests of all parties. The case is clearly not moot.

**B**

■ Defendants argue, and the court of appeals concluded, that the district court had no jurisdiction to construe and enjoin enforcement of § 21.033(a)(1) in a civil proceeding because it is a criminal statute. Defendants and the appeals court are correct that, as a rule, a party cannot seek to construe or enjoin enforcement of a criminal statute in a civil proceeding without a showing of irreparable injury to the party's vested property rights, which showing is absent here. *See State v. Morales*, 869 S.W.2d 941 (Tex.1994). However, the rule does not apply in this case because § 21.033(a)(1) is not a criminal statute.

It clearly is not a criminal statute on its face, and defendants do not argue that it is; rather, they argue that it is *in effect* a defense to prosecution under § 4.25, which clearly *is* a criminal statute, and that the general compulsory attendance provision, § 21.032(a), the exemptions, § 21.033, and the enforcement provision, § 4.25, should all be read together as parts of a penal provision. That the three statutes must be read together cannot be denied: it is impossible to determine whether a fine should be imposed under § 4.25 without determining whether the subject child is exempt from attending public schools under § 21.033. That fact alone, however, does not dictate that a statute which is not criminal on its face must be considered part of one that is, and therefore beyond the jurisdiction of civil courts to construe.

If the sole function of § 21.033 were to define the elements of the offense proscribed by § 4.25, or the elements of a defense to prosecution, the question whether § 21.033 is penal would be much closer. As it is, § 21.033 serves a function unrelated to prosecution under § 4.25. It is part of the basis for determining whether a child who is not in attendance in public school is subject to supervision under § 51.03 of the Family Code,

and whether a parent of the child may have his or her parental rights terminated for failing to enroll the child in school under § 15.02 of the Family Code. Not only is § 21.033 on its face a civil statute, it also has civil consequences. Defendants cite no authority for treating a statute like § 21.033 as a criminal statute.

■ Defendants argue that plaintiffs have foregone any claim to relief under the declaratory judgment statutes because they did not perfect an appeal to this Court from the court of appeals' adverse ruling on this issue. Such an appeal, however, was unnecessary. The appellate court's judgment upheld plaintiffs' claims for declaratory and injunctive relief, albeit on the basis of § 1983 and not state law. Since plaintiffs prevailed in the court of appeals, they are entitled to support that court's judgment by any argument, including those that the appellate court rejected. They need not perfect a separate application for writ of error unless they wish to obtain from this Court a different and more favorable judgment. *See Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634, 639 n. 5 (Tex.1989); *see also id.* at 643 (Ray, J., concurring) (explaining cross-points and separate appeals in intermediate courts and supreme court).

Accordingly, we conclude that the district court had jurisdiction to construe § 21.033(a)(1).

### C

■ Defendants argue that the SBOE's 1986 resolution is an administrative rulemaking which, under the Administrative Procedure Act ["the APA"], can be challenged only by appeal to a district court in Travis County. Tex.Gov't Code § 2001.038.[12] The recommendation contained in the resolution, defendants argue, fits squarely within the statutory definition of an administrative rule: "a state agency statement of general applicability that ... implements, interprets, or prescribes law or policy...." *Id.* § 2001.003(6)(A)(i). Plaintiffs respond that the Legislature has not authorized the SBOE to make rules construing private schools generally or § 21.033(a)(1) in particular. Alternatively, plaintiffs argue that the 1986 resolution cannot be a rule because it does not say it is a rule and the SBOE made no attempt in issuing it to comply with the notice and hearing requirements for rulemaking proceedings. Defendants answer that plaintiffs' arguments are precisely the sort of complaints that § 2001.038 of the APA requires to be raised in a district court in Travis County. Defendants also argue that plaintiffs were required to raise their complaints within two years of the issuance of the 1986 resolution under § 2001.035 of the APA.[13]

In effect, defendants argue that although the SBOE did not treat the 1986 resolution as a rule at the time, and did not follow any of the procedures prescribed by statute for adopting rules, the resolution is a rule which can be challenged only in a Travis County District Court, and the time for complaining about the total lack of any rulemaking procedures has passed. At best, this argument is disingenuous. On its face, the resolution is little more than an urging to the Legislature to further define the private and parochial

---

12. The law governing administrative rulemaking in 1986, Tex.Rev.Civ.Stat.Ann. art. 6252–13a, has since been recodified as chapter 2001 of the Government Code. For purposes of this case the repealed provisions are identical to the recodified provisions, and we refer to the latter.

Section 2001.038 provides in pertinent part:

"(a) The validity or applicability of a rule ... may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

"(b) The action may be brought only in a Travis County district court."

13. "(a) A rule adopted after January 1, 1976, is not valid unless a state agency adopts it in substantial compliance with Sections 2001.023 through 2001.034 [prescribing notice, hearing, and other requirements].

"(b) A person must initiate a proceeding to contest a rule on the ground of noncompliance with the procedural requirements of Sections 2001.023 through 2001.034 not later than the second anniversary of the effective date of the rule."

school exemption in § 21.033(a)(1). It goes no further than to "recommend[ ] to the various school districts ... guidelines ... pending the action of the Texas legislature". It even recites that the SBOE's authority to define "private or parochial school" has been challenged by various entities, among them the Texas Legislative Council. As the SBOE is charged with implementing legislative policy, an opinion of the Legislative Council that the SBOE lacked authority to clarify § 21.033(a)(1) would appear to be entitled to considerable weight.[14] The SBOE offers no explanation why, if it thought the resolution was an agency rule in 1986, it made no effort to comply with the requirements of the APA before the resolution issued.

Not every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review. As noted above, the APA applies only to statements of general applicability that implement, interpret or prescribe law or policy. The 1986 resolution was not such a statement. It urged action by the Legislature and recommended guidelines to school districts. The guidelines were only recommended, not prescriptive, and they did not purport to implement or interpret § 21.033(a)(1) or agency policy, but only to provide direction pending action by the Legislature. In these circumstances, defendants' argument that the 1986 resolution constitutes a rule is plainly incorrect.[15]

Since plaintiffs' challenge to the 1986 resolution is not governed by the APA, the district court had jurisdiction of this case. Having reached this conclusion, we need not address plaintiffs' contention that the SBOE has no authority to make rules construing § 21.033(a)(1).

## III

We come now to the central issue in the case. Defendants acknowledge, contrary to their position from 1981–1986, that a home school can be a private school within the meaning of § 21.033(a)(1). Plaintiffs do not contend that every home school falls within the exemption, but only, as the district court held, homes in which children are taught in a bona fide manner from a curriculum designed to meet basic education goals. Plaintiffs also do not contend that the use of standard achievement tests cannot be considered in ascertaining whether a home school is being taught in a bona fide manner; they argue only, again as the district court held, that the use of such tests cannot be the determining factor.

The evidence in support of the district court's construction of § 21.033(a)(1) is virtually undisputed. Defendants do not deny that from 1916 to 1981 students in bona fide home schools were not prosecuted for violation of the compulsory attendance law. Defendants also concede that the TEA's policy from 1981–1986, that no home school could be a private school within the meaning of § 21.033(a)(1), was wrong. Defendants acknowledge the right of parents to teach their children at home and the efficacy of that means of education when it is conducted in a bona fide manner. Defendants were willing to agree before trial to essentially the same construction of § 21.033(a)(1) as the district court eventually reached. Defendants argue even now that the nine plaintiff couples come within the "private school" exemption from the compulsory attendance law, even though there is no evidence that they have met two of the elements prescribed by the 1986 resolution. From the record before us, we conclude that the district court's declaration of the meaning of "private school" in

---

14. The Texas Legislative Council is a legislative agency composed of the Lieutenant Governor, the Speaker of the House of Representatives, the chairs of the Senate and House administration committees, four other senators, and nine other representatives. Tex Gov't Code § 323.001(a)-(b). Among the powers of the Council are to "study and investigate the functions and problems of state departments, agencies, and officers". *Id.* § 323.006(a)(1).

15. *Cf.* 1 Kenneth Culp Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 6.2 (3d ed. 1994) (distinguishing statements to which federal Administrative Procedure Act, 5 U.S.C. § 553, does and does not apply); 3 Basil J. Mezines, Jacob A. Stein & Jules Gruff, Administrative Law § 15.07[4] (1990, Supp.1991) (distinguishing statements to which federal Administrative Procedure Act, 5 U.S.C. § 553, does and does not apply).

§ 21.033(a)(1), as it relates to home schools, is clearly correct.

Defendants argue that the district court's judgment deprives the SBOE of its proper role in developing policies for the public schools. We do not believe that it does. The SBOE has the power and duty to "take actions necessary to implement legislative policy for the public school system of the state." Tex.Educ.Code § 11.24(a). Legislative policy regarding the exemption of students in private schools from attendance in public schools is expressed in § 21.033(a)(1). The district court has construed that provision as it has been understood and applied for most of this century. The SBOE continues to have responsibility for implementing the statutory policy. The SBOE is not authorized, however, to change legislative policy; that is the sole province of the Legislature. The Legislature has not accepted the SBOE's invitation in its 1986 resolution to clarify the private school exemption. The Legislature has indicated, however, that it considers home schools to fall within the exemption. In amending § 4.25 and other provisions of the Education Code in 1989, the Legislature stated:

Nothing in this Act applies to students in attendance upon a private or parochial school, *which includes home schools,* in accordance with Section 21.033, Education Code.

Act of May 28, 1989, 71st Leg., R.S., ch. 658, § 11, 1989 Tex.Gen.Laws 2165, 2168 (emphasis added).

As we have noted above, plaintiffs argue that the TEA has no authority to promulgate rules construing § 21.033(a)(1). The decision we reach does not require that we address this argument today. On the other hand, nothing in our opinion precludes the TEA from setting such guidelines for enforcement of the compulsory attendance law as are within its authority. Specifically, the TEA is not precluded from requesting evidence of achievement test results in determining whether children are being taught in a bona fide manner. While administration of such tests cannot be a prerequisite to exemption from the compulsory attendance law, we do not preclude the TEA from giving this factor heavy weight. Should the SBOE choose to promulgate additional rules under the Administrative Procedure Act, its authority to do so and the propriety of such rules will be subject to judicial review.

## IV

The district court awarded plaintiffs costs and attorney fees to be paid by the defendant school districts, but not by any of the other defendants.[16] The court based its award on a provision of the Texas Uniform Declaratory Judgments Act ["the DJA"], Tex.Civ.Prac. & Rem.Code § 37.009, which authorizes the award of such reasonable and necessary attorney fees as are just and equitable, and 42 U.S.C. § 1988. The court of appeals affirmed, but only on the basis of § 1988. We conclude that the award of attorney fees was proper under the DJA and do not address § 1988.

The school districts argue that as a rule they have governmental immunity from liability for attorney fees, and that this immunity is not waived by the DJA. A number of decisions from the courts of appeals have concluded that the DJA does not waive governmental immunity for attorneys fees.[17] At

---

**16.** The trial court also concluded that the representative school district fees should not have to bear their attorney fees and expenses alone, and awarded these districts fees from the other districts in the defendant class. The representative districts do not argue that governmental immunity would bar their awards from the other districts.

**17.** *See Dallas Area Rapid Transit v. Plummer,* 841 S.W.2d 870 (Tex.App.—Dallas 1992, writ denied); *Waugh v. City of Dallas,* 814 S.W.2d 492 (Tex.App.—Dallas 1991, writ denied); *Rodeheaver v. Steigerwald,* 807 S.W.2d 790 (Tex.App.—Houston [14th Dist.] 1991, writ denied); *Texas*

*Dep't of Human Serv. v. Methodist Retirement Serv., Inc.,* 763 S.W.2d 613 (Tex.App.—Austin 1989, no writ); *City of Houston v. Lee,* 762 S.W.2d 180 (Tex.App.—Houston [1st Dist.] 1988), *rev'd on other grounds, Lee v. City of Houston,* 807 S.W.2d 290 (Tex.1991); *Texas Employment Comm'n v. Camarena,* 710 S.W.2d 665 (Tex.App.—Austin 1986), *rev'd on other grounds,* 754 S.W.2d 149 (Tex.1988). *See also City of Houston v. De Trapani,* 771 S.W.2d 703 (Tex.App.—Houston [14th Dist.] 1989, writ denied) (affirming award of fees under federal civil rights act, but noting that such award would not be available under state declaratory judgments act).

least one appellate court has concluded that the Act does waive governmental immunity from an award of attorney fees and costs for a municipality, insofar as the Act defines "person" as including municipalities, requires municipalities to be joined in actions involving the validity of an ordinance, and allows awards of attorney fees and costs without any indication of an intent to exempt municipalities.[18] Several other cases affirm attorney fee awards against governmental entities without any discussion of sovereign immunity.[19]

We have touched on the issue in several cases without ever expressly deciding it. In *Oake v. Collin County*, 692 S.W.2d 454 (Tex. 1985), a declaratory judgment action involving a property tax dispute, we considered whether the trial court had abused its discretion in refusing to award attorney fees against various governmental entities and concluded that it had not. We did not suggest that the taxing units and counties in that case were immune from liability for attorney fees under the DJA. In *Duncan v. Pogue*, 759 S.W.2d 435 (Tex.1988), *rev'g* 753 S.W.2d 255 (Tex.App.—Tyler 1988), without mentioning governmental immunity, we concluded that the trial court acted within its discretion in awarding attorney fees against the county commissioners' court. The court of appeals had held that the DJA does not authorize an award of attorney fees against a county.

In other cases we have awarded attorney fees against governmental entities based upon other statutes. In *Texas State Employees Union v. Texas Dep't of Mental Health and Mental Retardation*, 746 S.W.2d 203 (Tex.1987), the award of fees was based on provisions covering damages, costs, and fees adjudged in a cause of action for the deprivation of a right, privilege or immunity secured by the constitution or laws of this State or the United States, against state employees, officers or governing board members who acted in the course or scope of their employment. TEX.CIV.PRAC. & REM.CODE §§ 104.001–.003 (now providing for indemnification up to specified amounts).[20] In *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149 (Tex.1988), the award of fees was based on provisions prohibiting state officials from discriminating on the basis of a person's race, religion, color, sex, or national origin. TEX.CIV.PRAC. & REM.CODE § 106.001–.002. In *Lee v. City of Houston*, 807 S.W.2d 290 (Tex.1991), the district court granted declaratory relief and attorney fees, and the court of appeals reversed. We reversed the appellate court's holding on the merits and remanded the case to the trial court for entry of judgment consistent with our opinion, without addressing the availability of attorney fees. In a subsequent original proceeding to enforce the Court's judgment, *Lee v. Downey*, 842 S.W.2d 646, 649 (Tex.1992), the Court directed the trial court to award attorney fees and indicated that the award was authorized by TEX.LOCAL GOV'T CODE § 143.015, which allows attorney fees in appeals from decisions of the Fire Fighters' and Police Officers' Civil Service Commission.[21]

The DJA is a remedial enactment which allows courts to declare relief, whether or not further relief is or could be claimed, to "settle and afford relief with respects to rights, status, and other legal relations". *Id.* §§ 37.002, .003(a). A person "whose rights,

18. *City of El Paso v. Croom Const. Co.*, 864 S.W.2d 153 (Tex.App.—El Paso 1993, writ denied) (construing contract to build stadium).

19. *See, e.g., District Judges v. Commissioners Court*, 677 S.W.2d 743 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). *See also International Ass'n of Firefighters Local 624 v. City of San Antonio*, 822 S.W.2d 122, 132 (Tex.App.—San Antonio 1991, writ denied) (reversing on other grounds and remanding for possible award of attorney fees under § 37.009); *Lubbock Prof. Firefighters v. City of Lubbock*, 742 S.W.2d 413, 418–19 (Tex. App.—Amarillo 1987, writ ref'd n.r.e.) (reversing on other grounds and remanding for possible award of attorney fees).

20. We note that although the trial court found that the TEA had acted in bad faith, it did not find that any individual acted in bad faith, and concluded that no attorney fees, expenses or costs shall be borne by any school attendance officer or individual defendant.

21. A dissenting opinion on rehearing, in which the author of this opinion joined, expressed the view that the DJA does not waive governmental immunity for an award of attorney fees. 842 S.W.2d at 654 n. 4 (Gonzalez, J., dissenting on rehearing).

status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.* § 37.004(a). All persons who have or claim any interest that would be affected by the declaration must be made parties; those not made a party are not prejudiced by any declaration. *Id.* § 37.006(a). If the validity of a municipal ordinance or franchise is involved, a municipality must be made a party, and if a statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general must be served with a copy of the proceeding and is entitled to be heard. *Id.* § 37.006(b). The Act specifically authorizes an award of "costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* § 37.009.

 The DJA expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. The Act thus contemplates that governmental entities may be—indeed, must be—joined in suits to construe their legislative pronouncements. These provisions provide the context for the Act's authorization, in § 37.009, of attorney fee awards. We conclude that by authorizing declaratory judgment actions to construe the legislative enactments of governmental entities and authorizing awards of attorney fees, the DJA necessarily waives governmental immunity for such awards.

The school districts complain that the award of fees was not properly adjudicated against them, in that plaintiffs' claims were primarily directed against the state defendants. We note, however, that the district court directed the award to be paid by the TEA from funds designated for public school districts. The school districts also complain

about the inclusion of various items in the district court's award. They argue that plaintiffs were required to segregate time spent on temporary injunctive relief and the non-federal claims on which plaintiffs did not prevail. The record reflects that all plaintiffs' attorneys' time was spent on issues related to the declaratory relief which was granted. The school districts also argue that some items of expenses and costs were not recoverable. We conclude, however, that the districts have failed to show reversible error.

Accordingly, we hold that the district court's award of attorney fees was authorized by the DJA and was not an abuse of discretion.

## V

 The district court enjoined defendants from enforcing the compulsory attendance law contrary to the construction set out in the court's judgment. There is no indication, however, that defendants will attempt to contravene the district court's judgment, or ours. On the contrary, we are confident that defendants will abide by our decision in carrying out their duties. Accordingly, we conclude that issuance of a permanent injunction was unnecessary and should be reversed.[22]

The lower courts held that defendants had violated plaintiffs' constitutional rights and § 1983 of the federal Civil Rights Act. As we have accorded plaintiffs all the relief to which they are entitled under the Declaratory Judgments Act, we do not reach their constitutional arguments under § 1983. The 1986 resolution acknowledged that home schooling may involve constitutional claims of religious freedom. Our decision today need not, and does not, address such claims.

\* \* \* \* \* \*

The judgment of the court of appeals is reversed insofar as it affirms the district court's permanent injunction. In all other respects the judgment of the court of appeals is affirmed.

---

**22.** The school district defendants argue that the classes of plaintiffs and defendants were improperly certified for an award of injunctive relief. Defendants do not make the same argument with respect to the award of declaratory relief. As we have reversed the district court's injunction, we need not consider whether the classes were properly certified.

GONZALEZ, Justice, concurring in part and dissenting in part on motion for rehearing.

My opinion of June 15, 1994 is withdrawn and this one is substituted in its place. With the exception of the discussion of attorneys' fees and court costs, I join the Court's opinion and judgment. I dissent, however, from Part IV of the Court's opinion, from the order denying a motion for rehearing, and from that part of the judgment which orders that the plaintiffs recover attorneys' fees and court costs from the defendants. In this case, the doctrine of sovereign immunity precludes an award of attorneys' fees against the defendants in the absence of an express waiver of immunity by the Legislature. The Court errs in ruling that the Uniform Declaratory Judgments Act (DJA), TEX.CIV.PRAC. & REM.CODE §§ 37.001–.011, implicitly waives sovereign immunity so that defendants may be held liable for attorneys' fees. 893 S.W.2d 432, 445–46 (Tex.1994). The Court gives the DJA a curious construction that is not supported by logic or well-established precedent and a construction which has the potential for disastrous effects on school districts and other governmental agencies. I would grant the motion for rehearing and hold that the school districts are not liable for attorneys' fees under the DJA, but would consider whether they are available under 42 U.S.C. § 1983.

I continue to adhere to the principles expressed in my opinion in *Lee v. Downey,* 842 S.W.2d 646, 655 n. 4 (Tex.1992) (Gonzalez, J., dissenting on motion for rehearing). To recover attorneys' fees in this case, the plaintiffs must show that their suit is an exception to two broad rules. The first rule is that subdivisions of the sovereign are immune from suit. *See W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 839 (1958) (approving the court of appeals' statement that a suit against the state should be abated "because of the State's immunity from suits brought without its consent," 303 S.W.2d 443, 445 (Tex.Civ.App.—Fort Worth 1957)). Only the Legislature may waive sovereign immunity. *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex.1993); *see Barr v. Bernhard,* 562 S.W.2d 844, 846 (Tex.1978)

(citing *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976)) (stating, "any waiver of governmental immunity is a matter to be addressed by the Legislature."); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847) (holding "No State can be sued in her own Courts without her consent and then only in a manner indicated by that consent."). Furthermore, the Legislature must use clear and unambiguous language to waive immunity. *See Guillory,* 845 S.W.2d at 813–14 (explaining that waiver exposes the government to increased liability that ultimately the state's taxpayers bear); *Texas Prison Bd. v. Cabeen,* 159 S.W.2d 523, 525–28 (Tex.Civ.App.—Beaumont 1942, writ ref'd) (examining a statute to determine if the Legislature had expressly waived sovereign immunity). The second rule is that attorneys' fees may not be awarded unless prescribed by statute for the particular kind of case. *First City Bank v. Guex,* 677 S.W.2d 25, 30 (Tex.1984); *see Texas Employment Comm'n v. Camarena,* 710 S.W.2d 665, 670 (Tex.App.—Austin 1986), *rev'd on other grounds,* 754 S.W.2d 149 (Tex.1988). These rules prohibit a court from awarding attorneys' fees merely because it deems them appropriate. *Camarena,* 710 S.W.2d at 670. Thus, in this case, an award of attorneys' fees would be permissible only if a statute expressly waived sovereign immunity and authorized the recovery of attorneys' fees from the defendant governmental agencies.

The DJA does not. The DJA waives sovereign immunity insofar as it permits plaintiffs to bring actions in order to construe legislative enactments of governmental entities; it also requires that interested parties, including governmental agencies, be joined in these suits. *See* TEX.CIV.PRAC. & REM.CODE §§ 37.004(a), 37.006. However, the Court confuses this waiver of the government's immunity from suit with waiver of immunity from liability. *See Missouri Pac. R.R. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970); *accord Couch v. Ector County,* 860 S.W.2d 659, 661 (Tex.App.—El Paso 1993, no writ); *Avmanco, Inc. v. City of Grand Prairie,* 835 S.W.2d 160, 164–65 (Tex.App.—Fort Worth 1992, appeal dism'd as moot); *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied). Nowhere does the DJA ex-

pressly authorize this Court to hold a governmental entity liable for attorneys' fees in a declaratory judgment action. *See Lee,* 842 S.W.2d at 655 n. 4 (Gonzalez, J., dissenting on motion for rehearing); *Dallas Area Rapid Transit v. Plummer,* 841 S.W.2d 870, 875 (Tex.App.—Dallas 1992, writ denied); *Waugh v. City of Dallas,* 814 S.W.2d 492, 496–97 (Tex.App.—Dallas 1991, writ denied); *Rodeheaver v. Steigerwald,* 807 S.W.2d 790, 793 (Tex.App.—Houston [14th Dist.] 1991, writ denied), *cert. denied,* 502 U.S. 1093, 112 S.Ct. 1167, 117 L.Ed.2d 414 (1992); *City of Houston v. De Trapani,* 771 S.W.2d 703, 708 (Tex.App.—Houston [14th Dist.] 1989, writ denied); *Texas Dep't of Human Servs. v. Methodist Retirement Servs., Inc.,* 763 S.W.2d 613, 614 (Tex.App.—Austin 1989, no writ); *City of Houston v. Lee,* 762 S.W.2d 180, 188 (Tex.App.—Houston [1st Dist.] 1988), *rev'd on other grounds,* 807 S.W.2d 290 (Tex.1991); *Camarena,* 710 S.W.2d at 670. For this reason alone, the order that the defendants pay attorneys' fees is erroneous.

The Court compounds its error by determining that the DJA **implicitly** authorizes the plaintiffs' recovery of attorneys' fees in this declaratory judgment suit. 893 S.W.2d at 445–46. This holding conflicts with the legislative admonishment that a "resolution granting permission to sue does not waive to any extent immunity **from liability.**" TEX. CIV.PRAC. & REM.CODE § 107.002(b) (Supp. 1995) (emphasis added). When the Legislature was considering the House Bill it later enacted as the attorney fee provision of the DJA, the director of the Legislative Budget Board sent a fiscal note to the Committee on Judiciary of the House of Representatives which stated:

No fiscal implication or additional cost to the State or units of local government attributable to the bill, should it be enacted, is anticipated.

FISCAL NOTE, Tex.H.B. 375, 67th Leg., R.S., ch. 190, § 1, 1981 Tex.Gen.Laws 455, 455 (amending TEX.REV.CIV.STAT. art. 2524–1 § 10, now codified at TEX.CIV.PRAC. & REM. CODE § 37.009). The Legislature did not intend or foresee that it was authorizing the award of attorneys' fees and court costs against state entities when it amended the DJA.

Only through a feat of statutory sleight of hand does the Court achieve its holding that attorneys' fees can be awarded under the DJA. The result is a disappearing act for the rule requiring a clear and unambiguous waiver of sovereign immunity. As stated, the DJA simply does not contain a clear and unambiguous statement that a governmental entity may be held liable for attorneys' fees. *See* TEX.CIV.PRAC. & REM.CODE § 37.009. The Legislature certainly has the power to place this burden on taxpayers. However, in my opinion, it has not done so in the clear and unambiguous language that this Court has previously required.

I would retain the rule that the Legislature must expressly waive sovereign immunity. By finding an implied waiver of sovereign immunity in this case, the Court disturbs an important principle in the law of sovereign immunity. Presumably a plaintiff may now recover whatever costs, fees, or damages which he or she can persuade a trial court that a statute impliedly allows. By its ruling today, the Court turns the law of sovereign immunity on its head. Now a governmental entity will have to identify statutes that expressly **bar** recovery of costs, fees, or damages before it will be excused from such liability. Thus, the Court's implied waiver ruling introduces a grave threat to the state's financial resources.

Furthermore, the Legislature is perfectly capable of drafting statutes which expressly waive sovereign immunity, without assistance from us or any other court. For example, the Texas Tort Claims Act has a clear and unambiguous waiver of sovereign immunity, thereby allowing a plaintiff to bring suit against a governmental entity in certain circumstances. *See* TEX.CIV.PRAC. & REM.CODE § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter."). However, the Texas Tort Claims Act does not expressly provide for the recovery of fees and costs, and no court has awarded them to a plaintiff under the Act. *See id.* § 101.021(1) (allowing a governmental unit to be liable solely for "property damage, personal injury, and

death"); *id.* § 101.023 (capping liability for bodily injury or death). Similarly, the Open Government Act expressly authorizes actions against otherwise immune governmental entities in order to prevent violations of the Act. TEX.GOV'T CODE § 551.142. In contrast to the Texas Tort Claims Act, the Open Government Act unambiguously states that a court "may assess costs of litigation and reasonable attorney fees incurred by a plaintiff ... who substantially prevails in an action" against members of "a governmental body." *Id.* Finally, the Whistleblower Act expressly provides for waiver of immunity and for recovery of attorneys' fees. *See id.* §§ 554.001–.009. If a state agency or local government suspends, terminates, or discriminates against a public employee who has reported a law violation, the employee is entitled to sue for injunctive relief, actual and exemplary damages, court costs, and "reasonable attorneys' fees."[1] *Id.* §§ 554.002, 554.003(a). There are other examples in which the Legislature has expressly authorized the recovery of attorneys' fees or costs from a governmental entity. *See, e.g.,* TEX. CIV.PRAC. & REM.CODE § 105.002; *id.* § 106.002(b). The Legislature's specificity of language in the Open Government Act and the Whistleblower Act sharply contrasts with the general provisions the Court relies on in this case for awarding attorneys' fees under the DJA.

Another flaw with the Court's reasoning regarding attorneys' fees is the possible result: the imposition of a $400,000 burden on Texas taxpayers which the Legislature never envisioned when it passed the DJA. Holding that the DJA waives sovereign immunity to the extent of allowing an award of attorneys' fees in this case could "divert money from the schools and would thereby impair the quality and availability of public education." *Duson v. Midland County Indep. Sch. Dist.,* 627 S.W.2d 428, 429 (Tex.Civ.App.—El Paso 1981, no writ) (affirming the nonapplicability of the Texas Tort Claims Act to public school districts). Unless the plaintiffs are required to obtain a legislative appropriation to collect the $400,000 judgment, the potential drain of tax dollars to pay attorneys' fees from funds earmarked for education cannot be minimized.[2] In today's litigious society, suits against school districts over dress codes, school prayer, sex education, cheerleader selections, and the like are not uncommon. Such litigation drains scarce funds and diverts the energies of school officials from the task of education. Because of the tremendous costs associated with litigating these issues, some school districts will decide to compromise on matters of principle rather than go to court and defend them. Unless the Legislature revisits the issue of governmental immunity from attorneys' fees and court costs, to correct the Court's holding in this case, there is the potential of a further drain on scarce educational dollars.

The Court's opinion (although not its judgment) approves the trial court's order that the Texas Education Agency exclusively pay the plaintiffs' attorneys' fees, in theory to relieve the defendant school districts from the burden of paying them. The effect is the same. Whether the trial court orders the TEA or each district to pay the award of attorneys' fees, school districts will be deprived of money intended for education.

For these reasons, I would withdraw the opinion of the Court and grant the motion for rehearing. A new opinion addressing the issue of the award of attorneys' fees and court costs under 42 U.S.C. § 1983 is prefer-

---

1. Even then, it may take a legislative appropriation to collect a judgment from the state. *See Green v. Sharp,* 37 Tex.Sup.Ct.J. 1227 (Sept. 29, 1994) (orig. proceeding) (overruling motion for leave to file a petition for writ of mandamus to compel the Comptroller of Public Accounts to issue a check from the state treasury to satisfy a judgment against the Texas Department of Human Services); *Texas Dep't of Human Servs. v. Green,* 855 S.W.2d 136, 145 (Tex.App.—Austin 1993, writ denied) (stating that the prevailing plaintiff must request a legislative appropriation to collect damages awarded him under the Whistleblower Act).

2. For example, besides the $400,000 award for attorneys' fees and court costs from public school funds in this case, a trial court in another case recently awarded $48,000 to the attorneys of an elementary school student who challenged the hair grooming regulations of the school district he was attending. *See* Gamboa, *Judge Rules in Favor of Bastrop Student and His Ponytail,* AUSTIN AM. STATESMAN, Feb. 11, 1995, at B1.

able to the current opinion, which stands the law of sovereign immunity on its head.