OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

July 14, 1999

The Honorable René O. Oliveira
Chair, Ways and Means Committee
Texas House of Representatives
P.O. Box 2910
Austin, Texas 78768-2910

Opinion No. JC-0076

Re: Whether a transit authority created under chapter 451 of the Transportation Code may purchase a railroad line, part of which extends beyond the transit authority's territory, and related question (RQ-946)

Dear Representative Oliveira:

A transit authority created under chapter 451 of the Transportation Code may acquire any property "necessary, convenient, or useful" to providing mass transit. Your predecessor in office asked whether a metropolitan-rapid-transit authority created under chapter 451 may purchase a railroad line and right-of-way that lies outside the system's service area. He also asked whether a transit authority may purchase a "rail freight common carrier obligation" on the railroad line. We conclude that chapter 451 permits the transit authority to purchase a railroad line lying outside the authority's service area, but only if the authority has found that the property is necessary, convenient, or useful to providing mass transit within the authority's service area. In answer to the second question, we cannot conclude as a matter of law that a rail-freight-common-carrier obligation is not necessary, convenient, or useful to a transit authority. Rather, the matter is for the transit authority's governing body to decide in the first instance.

We understand these questions arise from a situation involving Capital Metropolitan Transportation Authority ("Capital Metro"), the City of Austin's metropolitan-rapid-transit authority. Your predecessor's letter suggests that Capital Metro was established in accordance with chapter 451 of the Transportation Code, and we assume for purposes of this opinion that this assertion is correct. *See* Letter from Honorable Tom Craddick, Chair, House Ways & Means Committee, to Honorable Dan Morales, Attorney General (June 26, 1997) (on file with Opinion Committee) [hereinafter "Request Letter"]. Apparently, Capital Metro intends to purchase from the City of Austin a 162-mile railroad line running from the City of Giddings through Austin to the City of Llano. *See* Jim Phillips, *Preservation group's railroad bid thwarted*, AUSTIN AMERICAN STATESMAN, July 9, 1997, at B1, B5 [hereinafter "Phillips article"]. We understand the City of Austin purchased the railroad line as a single piece and plans to sell it undivided. *See* Letter from Myra A. McDaniel, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., to Joe Ramirez, Manager, Railroad Right-Of-Way & Projects, Capital Metropolitan Transportation Authority (June 25, 1996) (on file with Opinion Committee). Capital Metro plans to use at least the middle portion of the line, which runs from Leander to downtown Austin, to establish a passenger-rail service. *See* Phillips article, *supra*, at B1. But the line's extremities, which measure approximately 100 miles, lie beyond Capital Metro's service area. *See id.* Thus, your predecessor asked whether Capital Metro may purchase that portion of the railroad line lying beyond its service area. *See* Request Letter, *supra*. This

opinion uses the term "service area" to denote the area Capital Metro serves under chapter 451 of the Transportation Code or by contract with other governmental entities. *See* TEX. GOV'T CODE ANN. ch. 791 (Vernon 1994 & Supp. 1999) (Interlocal Cooperation Act); Tex. Att'y Gen. LO-92-82, at 3 (determining that City of Socorro and City of El Paso may contract for delivery of mass-transit services).

Chapter 451 of the Transportation Code pertains generally to metropolitan-rapid-transit authorities. While the chapter nowhere states its purpose, the 1973 act adopting chapter 451's statutory predecessor recognized "a pressing need for efficient and economical rapid transit facilities in metropolitan areas of the state and for relief from the harmful effects of air pollution and traffic congestion in [those] areas." *See* Act of May 15, 1973, 63d Leg., R.S., ch. 141, § 20, 1973 Tex. Gen. Laws 302, 315; *see also id.* § 1, 1973 Tex. Gen. Laws 302, 302-03 (listing legislative findings). Chapter 451 accordingly facilitates the creation of municipal transit authorities to provide mass transit in the metropolitan areas, and it is to be "construed liberally to carry out its purposes." TEX. TRANSP. CODE ANN. § 451.002 (Vernon 1999). Chapter 451 limits the term "transit authority system" to property held only for mass-transit purposes and situated on authority property for mass-transit purposes. *Id.* § 451.001(8). The term "mass transit" encompasses only the transportation of passengers and the transportation of passengers' hand-carried packages or baggage. *Id.* § 451.001(4).

Chapter 451 bestows broad powers on a transit authority to accomplish the chapter's purpose. In general, an authority has "any power necessary or convenient" to providing mass transit to persons within its service area. *See id.* § 451.054(a). Moreover, with respect to the acquisition of property, licenses, rights, or other interests, a transit authority may acquire any interest "necessary, convenient, or useful" to exercising its statutory powers. *Id.* § 451.054(d). The authority may sell interests that are unnecessary for, or if a lease, are "inconsistent with," the operation and maintenance of the transit authority system. *Id.* § 451.054(d), (e).

We believe chapter 451 grants a transit authority sufficient power to purchase real property beyond its service area, but only if the authority determines that the acquisition is "necessary, convenient, or useful" to providing mass transit to persons in its service area. *See id.* § 451.054(d). The authority's determination is subject to review by a court, which will consider whether the authority's determination is reasonable. *See Dallas Area Rapid Transit v. Plummer*, 841 S.W.2d 870, 872 (Tex. App.–Dallas 1992, writ denied) (applying substantial evidence standard to review of Dallas Area Rapid Transit Trial Board decision).

The terms "necessary, convenient, or useful" provide an authority substantial discretion. The Texas Supreme Court defines the word "necessary" in context: "'The word "necessary" has not a fixed meaning or character peculiar to itself. It is flexible and relative. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity.'" *Scott v. Walden*, 165 S.W.2d 449, 451-52 (Tex. 1942) (quoting *Chicago, I. & L. R. Co. v. Baugh*, 94 N.E. 571, 573 (Ind. 1911)). The term "convenient" denotes accordance or suitability. *See* III OXFORD ENGLISH DICTIONARY 861 (2d ed. 1989) (defining "convenient"). The term "useful" signifies the quality of being suitable, or advantageous, profitable, or beneficial. *See* XIX OXFORD ENGLISH DICTIONARY 356 (2d ed. 1989) (defining "useful"). Taken as a whole, the phrase

"necessary, convenient, or useful" permits a transit authority to acquire property, licenses, rights, and other interests if the transit authority's governing body finds that the acquisition will advance its effort to accomplish its statutory purpose. TEX. TRANSP. CODE ANN. § 451.054(d) (Vernon 1999). Nevertheless, the acquisition must be consistent with the transit authority's statutory purpose. *Id.*

In response to your predecessor's first question, a transit authority reasonably might find that the purchase of the property at issue is "necessary, convenient, or useful" to providing mass transit to persons within the service area, particularly where the seller will sell the property only in an undivided state and where part of the property will be used to transport persons within the authority's service area. *See id.* § 451.054(a). Moreover, nothing in chapter 451 limits a transit authority to purchasing real property within its service area. *Compare* Tex. Att'y Gen. Op. No. H-392 (1974) at 2 (determining that, depending upon use to which land will be put, constitution and statutes may not preclude county commissioners court from acquiring land outside county) *with* Tex. Att'y Gen. LO-94-018, at 3 (concluding that statute forbids Harris County to acquire land outside county for use as park). Consequently, assuming Capital Metro has determined that the purchase of those portions of the railroad line lying outside its service area is necessary, convenient, or useful to providing mass transit to persons within the service area, we believe Capital Metro may acquire the line's extremities.

The second issue your predecessor raised is a closer question. Your predecessor asked, presumably premised upon our answering your first question in the affirmative, whether Capital Metro may purchase a rail-freight-common-carrier obligation that is imposed upon the entire railroad line. *See* Request Letter, *supra*. Although your predecessor did not define the term "rail-freight-common-carrier obligation," it appears to refer to the transportation of freight (other than passengers' hand-held packages and baggage). We understand the obligation attaches to the whole right-of-way. *See* Letter from Myra A. McDaniel, Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P., to Honorable Dan Morales, Attorney General (July 25, 1997) (on file with Opinion Committee) [hereinafter "McDaniel letter"]. We have been told the obligation is necessary to control the operations on the right-of-way, and if Capital Metro cannot control the operations, then its mass-transit services will be subservient to the rail-freight operations. *See id.* "[I]f Capital Metro does not own the entire Right-of-Way, the rail freight operator for the remaining portions of the Right-of-Way will be setting time tables, operating speeds and schedules that affect the entire Right-of-Way . . . to serve those shippers who make a 'reasonable request' to it. [*See* 49 U.S.C. § 11101(a) (Supp. II 1996) (requiring rail carrier providing transportation or service to provide such transportation or service "on reasonable request").] The time tables, operating speeds and schedules set by the rail freight operator, if the rail freight operator is not Capital Metro, inevitably will conflict with the time tables, operating speeds and schedules that Capital Metro seeks to set for mass transit service." McDaniel letter, *supra*.

Apparently, Capital Metro cannot acquire the rail line, which has existing freight services, without also acquiring the common-carrier obligation. *See id.* A rail carrier that provides common-carrier-railroad transportation for compensation and is part of the "general system of rail transportation," 49 U.S.C. § 10102(5) (Supp. II 1996) (defining "rail carrier"), must receive the approval of the federal Surface Transportation Board, *see id.* § 10102(1) (defining "Board"), to abandon any part of its railroad lines or discontinue operation on any part of its railroad lines. *Id.* § 10903(a)(1),

(b)(1), (d).  The Surface Transportation Board will deny an application to abandon track or discontinue service if it finds that public convenience and necessity do not justify the abandonment or discontinuance.  *Id.* § 10903(e)(2).  The City of Austin, which currently owns the track and the common-carrier obligation, sought an exemption from continuing rail-freight operations on the right-of-way, but the predecessor to the Surface Transportation Board denied the City's request.  *See* McDaniel letter, *supra*.

While a transit authority, such as Capital Metro, generally may purchase any property or interest that the authority finds necessary, convenient, or useful to exercising its statutory powers, chapter 451 of the Transportation Code restricts a transit authority to transporting individuals.  *See* TEX. TRANSP. CODE ANN. § 451.001(4), (8) (Vernon 1999) (defining "mass transit" and "transit authority system").  A transit authority may transport freight only to the extent that the freight consists of "hand-carried packages or baggage of a passenger." *See id.* § 451.001(4) (defining "mass transit").  Consequently, a transit authority's acquisition of a common-carrier-freight obligation does not appear to be consistent with its statutory authority, much less necessary, convenient, or useful to exercising its statutory powers.

But we cannot say as a matter of law that acquiring a common-carrier obligation is never necessary, convenient, or useful to the operation of a mass-transit authority.  Rather, the question, like the first issue your predecessor raised, must be determined in the first instance by Capital Metro's governing body.  Here, Capital Metro apparently cannot purchase the railroad it seeks without the common-carrier obligation, the purchase of the rail presumably will cost considerably less than building a parallel rail line without a common-carrier obligation, and the federal government's approval is required to abandon or discontinue rail-carrier service, *see* 49 U.S.C. § 10903(a)(1), (b)(1), (d) (Supp. II 1996).  Additionally, Capital Metro cannot control the rail line's usage and schedule without the common-carrier obligation.  It is, therefore, conceivable that Capital Metro's governing body may find the acquisition to be necessary, convenient, or useful to the accomplishment of its mass-transit purposes.

Of course, Capital Metro may not carry freight itself.  *See* TEX. TRANSP. CODE ANN. § 451.001(4) (Vernon 1999) (defining "mass transit").  Nevertheless, it may contract with another entity to fulfill the common-carrier obligations, *see id.* §§ 451.055(a), .056(a)(3) (authorizing authority to enter contracts generally and to lease all or part of transit authority system or contract for operation of all or part of transit authority system), just as the City currently meets its common-carrier obligation through a contract with the Longhorn Railway Company.  *See* McDaniel letter, *supra*.

## S U M M A R Y

A metropolitan transit authority may purchase property beyond its service area if the authority determines that the acquisition is "necessary, convenient, or useful" to providing mass transit to persons in its service area. Likewise, a transit authority may purchase a rail-freight-common-carrier obligation if the authority has determined that the acquisition is "necessary, convenient, or useful" to providing mass-transit services.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General