**DALLAS AREA RAPID TRANSIT, Appellant,**

v.

**Chauncey PLUMMER and Amalgamated Transit Union, Local 1338, Appellees.**

No. 05-91-00660-CV.

Court of Appeals of Texas, Dallas.

Sept. 21, 1992.

Rehearing Denied Oct. 26, 1992.

John T. Hoeft, Ward Allen White, Hyattye O. Simmons, Dallas, for appellant.

Hal K. Gillespie, David J. Watsky, Dallas, for appellees.

Before THOMAS, CHAPMAN and ROSENBERG, JJ.

OPINION

ROSENBERG, Justice.

We withdraw our opinion of July 10, 1992, and vacate our judgment of that date. This is now the Court's opinion.

DART appeals from a declaratory judgment rendered in favor of Chauncey Plummer and Amalgamated Transit Union, Local 1338 (the Union). The trial court upheld an administrative decision reinstating Plummer after his dismissal for shooting a bus passenger. DART attacks the judgment in five points of error. In its first three points of error, DART contends that the trial court erred in finding the Trial Board's decision was not arbitrary, capricious or in contravention of state law and that it was reasonably supported by substantial evidence. In its other two points of error, DART contends that the trial court erred in finding that DART was required to follow the grievance procedure and implement the Trial Board's decision.

Plummer and the Union bring four cross-points of error contending that DART waived the right to appeal the Trial Board's decision to the trial court and that they were entitled to attorney's fees. We overrule all points and cross-points of error and affirm the judgment of the trial court.

Plummer was driving a bus when a man boarded and became abusive. The man threatened Plummer, saying, "I will kill you." When Plummer stopped the bus and asked the man to get off, the man hit him. Plummer then shot and killed the man.

DART discharged Plummer for possessing a firearm while on duty, endangering himself and passengers, and causing injury to a passenger in violation of DART's personnel policy manual. Plummer filed a grievance with the DART Trial Board seeking reinstatement and an award of back pay.

To consider the propriety of the discharge, the Trial Board was presented this issue: "Was the discharge of Mr. Chauncey Plummer, the grievant, for just cause?

If not, what is the proper remedy?" To find an acceptable basis for a "just cause" discharge, the Trial Board considered whether the rule prohibiting possession of weapons while on duty had been applied even-handedly. Evidence showed that: (1) DART had made little effort to determine if the rule was followed; and (2) other employee drivers carrying and discharging firearms on buses were not dismissed. The Trial Board reinstated Plummer but denied back pay.

In its first three points of error, DART contends that the trial court erred in holding that the Trial Board's decision was not arbitrary, capricious, or in contravention of state law and that it was reasonably supported by substantial evidence.

■ An administrative ruling must be reviewed under the substantial evidence test. *Texas Alcoholic Beverage Comm'n v. Sierra*, 784 S.W.2d 359, 360 (Tex.1990). For substantial evidence to support the Trial Board's decision the evidence as a whole must be such that reasonable minds could have reached the same conclusion to justify the actions of the Trial Board. *Id.* Thus, the question before us is whether the Trial Board's decision was *reasonable*, not whether its decision was correct. *Id.* at 361. The reviewing court may not substitute its judgment for the Trial Board's, but must consider only the record upon which the decision is based. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989). The burden is on the complaining party to demonstrate an absence of substantial evidence. *Id.* Thus, a trial court may not set aside an order merely because testimony was conflicting or disputed or because it did not compel the result reached by the Trial Board. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984).

■ Next, in determining whether the Trial Board has acted arbitrarily or capriciously, the reviewing court must decide whether the order was based on a consideration of all relevant factors. An arbitrary or capricious act is one based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience. *Texas State Bd. of Dental Examiners v. Silagi*, 766 S.W.2d 280, 285 (Tex. App.—El Paso 1989, writ denied).

■ The record shows that there was much testimony on the subject of security, or lack thereof, on DART buses. Assaults on drivers and passengers were not uncommon. At the time of the incident at issue, DART did not have a transit police force to provide security. Plummer and the Union emphasized the fact that there was no formal security provided by DART. They claimed that Plummer carried a gun out of necessity and used it in self-defense. DART, on the other hand, did not consider Plummer's motives significant. It relied merely on the fact that Plummer violated at least three provisions of the personnel policy manual: 1) he carried a weapon; 2) he endangered the safety of himself and passengers; and 3) he deliberately caused physical injury to a passenger. The personnel policy manual provides that an employee may be discharged for engaging in these types of unacceptable conduct.

The Trial Board considered evidence of both DART's predecessor, Dallas Transit System (DTS), and DART policies and certain incidents involving bus drivers and weapons, some of which occurred under DTS administration, without objection by DART. The city of Dallas owned DTS. DART and the city entered into an Interlocal Service Agreement on December 14, 1983, wherein the city agreed to provide transportation services as an independent contractor of DART in accordance with policies, standards, and specifications established by DART. DTS had issued a bulletin in 1978 and, pursuant to the Interlocal Service Agreement, issued another in 1986, in accordance with DART policies, to remind employees of the weapon ban.

Plummer and the Union provided evidence of incidents on DTS and DART buses involving the use or possession of weapons by other drivers. One driver stated that he was not discharged for shooting a passenger in 1978 and that he continued to carry a gun until 1983. DART's Senior Director of Operations testified that another driver

who left a gun on a bus in 1986 was not disciplined. The administrative body in control at the time knew that the drivers disregarded the policy and yet did not discipline those drivers. There was no evidence that any driver, other than Plummer, was ever discharged for violating these policy provisions.

The Trial Board found that DART made little effort to discover whether employees carry weapons and that DART had been negligent in enforcing its policy. Therefore, the Trial Board reasoned, DART did not have just cause to discharge Plummer. It found, however, that because Plummer did violate policy, DART had grounds to impose a lesser penalty.

DART mentions in its brief that reinstating Plummer would violate its legal duty to protect passengers and that DART employees have a constitutional right to privacy, which precludes searches of employee lockers for handguns. DART failed to link these statements with its named points of error. Nevertheless, DART did not show that a lesser punishment than discharge would not protect its passengers; and DART did not show that the only way to enforce the employee weapon ban was by dismissal.

Therefore, based on all the evidence, we conclude that reasonable minds could have reached the same decision as the Trial Board. The decision was reasonable and based on a consideration of all relevant factors. We detect no violation of due process or any unfair or unreasonable conduct that shocks the conscience. The Trial Board's decision was neither illegal, arbitrary, or capricious, and it was reasonably supported by substantial evidence. We overrule points one, two, and three.

In its fourth and fifth points of error, DART contends that the trial court erred, as a matter of law, in holding that DART was under a contractual duty to implement the Trial Board's reinstatement award and that DART breached that duty by not implementing the award. DART argues that DART's discharge and grievance procedures were not the result of express mutual agreements between DART management and employees and, therefore, created no contractual duty to follow those procedures. DART claims that it is required by law only to ensure that its employees may present grievances to management, but that it is not required to follow the grievance procedure any further.

The history of DART's discharge and grievance procedure begins when DART, created to provide public transportation in the Dallas area, bought the assets of DTS from the city. Pursuant to the sale, purchase, and transfer contract between the city of Dallas and DART, DART Resolution number 87–0043, DART agreed to be responsible for meeting and assuming all the requirements for employee protective arrangements required by law. Specifically, DART agreed to comply with and assume the city's obligations under section 13(c) of the Urban Mass Transportation Act of 1964. That section requires governmental entities to make arrangements to preserve transit workers' rights, privileges, and benefits under existing collective bargaining agreements or otherwise before that governmental entity may receive federal financial assistance. Urban Mass Transportation Act of 1964 § 13(c), 49 U.S.C.A.App. § 1609(c) (West 1976); Guidelines, section 13(c), Urban Mass Transportation Act of 1964, as Amended, 29 C.F.R. § 215.3(e) (1986); *Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 16, 102 S.Ct. 2202, 2203, 72 L.Ed.2d 639 (1982).

The evidence shows that DART and employee representatives met in an attempt to develop mutually acceptable terms and conditions, which included general grievance procedures. Their efforts were not completely successful. DART and employee representatives submitted their only remaining differences—the grievance procedures—to the Secretary of Labor as required by section 13(c). Following the federal law, the Secretary of Labor modified DART's proposed grievance procedures. Correspondence from that office indicates that DART's proposal, supplemented with the Secretary of Labor's version of the grievance procedures, satisfied the requirements of section 13(c). That arrangement, including the revised grievance procedure,

is contained in DART's personnel policy manual.

■ DART claims that the grievance procedure is a collective bargaining agreement and unenforceable against a public entity. *See* TEX.REV.CIV.STAT.ANN. art. 5154 (Vernon 1987). However, arrangements under section 13(c) of the Urban Mass Transportation Act are not collective bargaining contracts. *See Jackson Transit Auth.*, 457 U.S. at 28, 102 S.Ct. at 2209. Section 13(c) arrangements are contracts, albeit contracts required by a federal statute. *Id.* at 22, 102 S.Ct. at 2206. Such protective arrangements are valid and enforceable in state courts. *Local Div. 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Auth.*, 667 F.2d 1327, 1333 (11th Cir.1982). Employees covered by a section 13(c) agreement, or their union, may bring a contract action in state court to enforce the agreement. *Jackson Transit Auth.*, 457 U.S. at 29 n. 13, 102 S.Ct. at 2210 n. 13; *Local Div. No. 714, Amalgamated Transit Union, AFL–CIO v. Greater Portland Transit Dist.*, 589 F.2d 1, 13–14 (1st Cir.1978). Also, section 8.9(j) of DART's personnel policy manual states that "[t]he decision of the Trial Board shall be final and binding." DART's personnel policy manual contains the grievance procedure properly promulgated pursuant to section 13(c) and, as part of the section 13(c) agreement, is binding on DART.

■ Plummer followed the grievance procedures set out in the personnel policy manual and the Trial Board ordered DART to reinstate Plummer to his position as driver without back pay. Instead of fully reinstating Plummer to his position, DART placed him on administrative leave with pay. We conclude that the trial court was correct in finding that DART has a contractual duty to implement the Trial Board's award and that failing to do so constitutes a breach of that duty. We overrule points four and five.

In their first two cross-points of error, Plummer and the Union contend that the trial court erred, as a matter of law, in failing to find that DART waived the right to avoid the Trial Board award when it agreed to and participated in a hearing before the Trial Board and that such finding was against the great weight and preponderance of the evidence.

■ In determining a matter-of-law point, we apply a two-prong test. First, the record must be examined for evidence that supports the court's finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, the entire record must be examined to see if the contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). When reviewing a finding to determine the factual sufficiency of the evidence, the reviewing court must examine all of the evidence and determine whether the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

■ Plummer and the Union argue that arbitration awards are valid, enforceable, and binding where the parties have agreed to arbitration and where no fraud, mistake, or misconduct is involved. However true regarding the law of arbitration, that statement does not apply here. A hearing before DART's Trial Board is not arbitration. By the terms of DART's personnel policy manual, such a hearing is merely a step in the grievance procedure whereby the employee appeals a grievance that has not been satisfactorily resolved. DART is required to comply with the personnel policy manual terms regarding grievance procedures, including participating in the hearing before the Trial Board. Further, nothing in the personnel policy manual impedes DART's right to appeal. State law provides that regional transit authorities, such as DART, have the authority to sue. TEX. REV.CIV.STAT.ANN. art. 1118y, § 10(c) (Vernon Supp.1992). DART is a public entity. TEX.REV.CIV.STAT.ANN. art. 1118y, § 10(a) (Vernon Supp.1992). The declaratory judgment action brought by DART is the proper method for determining its legal duties. *See Industrial Accident Bd. v. Texas Workmen's Compensation Assigned Risk Pool*, 490 S.W.2d 956, 958 (Tex.Civ.App.— Austin 1973, no writ).

After reviewing the evidence according to the appropriate standards, we conclude that the trial court's finding that DART did not waive its right to seek to avoid the Trial Board award is supported by the evidence and therefore is not wrong and unjust. We overrule cross-points one and two.

In cross-points three and four, Plummer and the Union contend that the trial court erred, as a matter of law, in failing to award them reasonable and necessary attorney's fees and that such finding is against the great weight and preponderance of the evidence. Plummer and the Union argue that they are entitled to attorney's fees under either the Declaratory Judgment Act or section 38.001 of the Civil Practice and Remedies Code because the claim was contractual. TEX.CIV.PRAC. & REM.CODE ANN. §§ 37.009, 38.001 (Vernon 1986).

The law does not support the position of Plummer and the Union. DART, as a governmental entity, is immune from liability for attorney's fees under the Declaratory Judgment Act. *Texas Dept. of Human Servs. v. Methodist Retirement Servs., Inc.*, 763 S.W.2d 613, 614 (Tex.App.—Austin 1989, no writ). Section 38.001 provides that a person may recover attorney's fees from "an individual or corporation" if the claim is for a contract. TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986). But DART, as a governmental entity, is neither an individual nor a corporation. *State v. Bodisch*, 775 S.W.2d 73, 75 (Tex. App.—Austin 1989, writ denied). Thus, Plummer and the Union are precluded from recovering attorney's fees in this case. We overrule cross-points three and four.

We affirm the judgment of the trial court.