Curtis STEPHENS, Appellant,

v.

**DALLAS AREA RAPID TRANSIT,**
Appellee.

No. 05–00–00566–CV.

Court of Appeals of Texas,
Dallas.

June 15, 2001.

Opinion on Denial of Rehearing
Aug. 17, 2001.

---

Keith H. Cole, Keith H. Cole, Jr., P.C., Dallas, for Appellant.

Harold R. McKeever, Jr., Dallas, for Appellee.

Before Justices LAGARDE, KINKEADE, and JAMES.

## OPINION

Opinion by Justice LAGARDE.

■ Curtis Stephens sued Dallas Area Rapid Transit (DART) for wrongful discharge under section 451.001 of the labor code, which prohibits retaliation against workers who file workers' compensation claims. *See* TEX.LAB.CODE ANN. § 451.001 (Vernon 1996). He appeals the trial court's take nothing judgment in favor of DART. In five points of error, appellant contends the trial court erred by: (1) ruling that the substantial evidence standard applied to the appeal of his grievance and his wrongful discharge claim; (2) denying his request to introduce additional evidence to support his claim that the DART Trial Board's decision to uphold his discharge was not supported by substantial evidence; and (3) dismissing his claims for attorney's fees and exemplary damages.[1] For reasons that follow, we affirm that portion of the trial court judgment granting partial summary judgment in favor of appellee on appellant's claims for attorney's fees and exemplary damages, and reverse and remand the remainder of the trial court's judgment for proceedings consistent with this opinion.

## Factual and Procedural Background

Appellant worked for DART for over thirteen years. On February 6, 1992, ap-

1. In its motion for summary judgment, DART contended appellant was not entitled to attorney's fees or exemplary damages. The Master heard DART's motion for summary judgment on February 12, 1999. The Master recommended that DART's motion on appellant's claims for attorney's fees and exemplary damages be granted and DART's remaining claims be denied. The trial court adopted the Master's recommendations and granted DART partial summary judgment as to appellant's claims for attorney's fees and exemplary damages. The partial summary judgment then merged into the trial court's final judgment. *See Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex.1972) (holding that an interlocutory judgment by a trial court is merged into the final judgment, and thus becomes final for purposes of appeal, whether or not the interlocutory judgment is specifically named within the final judgment).

pellant sustained a work-related injury to his shoulder. DART discharged appellant on September 19, 1994 for accumulating 162 absences following the February injury. This amount of lost time violated section 5.4 of the DART Employee Policy Manual, which states that employees are subject to discharge if they accumulate more than 131 days of lost time from the date of the original injury. Appellant filed a grievance, contending DART miscalculated his days of lost time. Specifically, appellant contended that a portion of the 162 days of lost time included time off for an injury he sustained to his foot on March 9, 1994. Appellant completed each step of DART's grievance process, which culminated in a trial before the DART Trial Board. The Trial Board found appellant had not suffered a work-related injury on March 9, 1994, and attributed all of appellant's lost time to the February 6, 1992 injury.[2] Based on these findings, the Trial Board upheld appellant's discharge. Following this decision, appellant filed suit under section 451.001 of the labor code. *See* TEX.LAB.CODE ANN. § 451.001 (Vernon 1996).

Appellant contends his suit contained two causes of action: (1) an appeal of the Trial Board's decision and (2) his statutory wrongful discharge claim. The record does not support this contention. At oral argument, appellant's counsel said the original petition was a pro se petition that incorporated an appeal of the Trial Board's decision into appellant's wrongful discharge claim. This original pro se petition is not included in our record and was superseded by appellant's first amended petition. The first amended petition alleg-

es only a statutory cause of action for wrongful discharge. In that petition, appellant contended DART wrongfully terminated him in violation of section 451.001 of the labor code because he filed more than one workers' compensation claim with the Texas Workers' Compensation Commission. Appellant did not appeal the Trial Board's decision upholding his discharge. The grievance and Trial Board decision were interjected into this litigation by DART in its first amended answer. In that pleading, DART asserted the affirmative defenses of election of remedies, res judicata, and governmental immunity.[3] Specifically, DART affirmatively asserted that appellant's statutory claim of wrongful discharge was barred because appellant had elected to pursue a grievance through DART, and the Trial Board's decision was final and binding.

DART then moved for summary judgment on the grounds that: (1) there was substantial evidence to support the Trial Board's decision to uphold appellant's discharge; (2) appellant could not show his termination would not have occurred but for his filing of a workers' compensation claim; (3) appellant's statutory wrongful discharge claim was barred because the Trial Board's decision was final and binding; and (4) appellant was not entitled to punitive damages or attorney's fees for his retaliatory discharge claim. In his response, appellant reiterated that there were genuine issues of material fact regarding his statutory wrongful discharge claim. He also indicated his wrongful discharge claim was not barred because DART's employment manual did not limit

2. The Texas Workers' Compensation Commission had previously found that appellant had not suffered an injury during the course of his employment on March 9, 1994.

3. The record indicates DART presented the trial court with no evidence on its affirmative defense of governmental immunity. Moreover, DART does not raise this defense on appeal. Accordingly, we will not discuss the merits of a governmental immunity defense.

his remedies to either a grievance process or a section 451.001 lawsuit, and the Trial Board's decision was not final and binding. On February 12, 1999, the Master conducted a hearing on DART's motion for summary judgment. The Master recommended DART's motion on appellant's claims for attorney's fees and punitive damages be granted, and DART's remaining claims be denied. The Master concluded the substantial evidence standard would apply when reviewing the Trial Board's decision, but that the summary judgment evidence did not establish as a matter of law that the Board's decision was supported by substantial evidence. The trial court adopted these recommendations on April 26, 1999.

The case was set for trial on November 2, 1999. At trial, DART made an oral motion that the trial court apply the substantial evidence standard to the case. It is unclear from the record whether the trial court heard evidence on November 2, 1999. Appellant contends DART made its oral motion before the parties presented evidence, but DART contends the motion was made after the conclusion of evidence. It is clear, however, that the trial court asked both parties to submit trial briefs on the issue of the substantial evidence standard. On December 9, 1999, after both parties submitted their trial briefs, the trial court entered a final judgment. That judgment stated the trial court had ruled that the substantial evidence standard did apply and that "there is substantial evidence to support the decision of the Trial Board." The trial court entered a take nothing judgment against appellant. Appellant contends this final judgment took him by surprise because he believed there would be a trial on his statutory wrongful discharge claim after the trial court determined whether to apply the substantial evidence standard. Appellant filed a motion for new trial, contending the trial

court erred in applying the substantial evidence standard and failing to address how the substantial evidence standard applied to his section 451.001 claim. At the hearing on his motion for new trial, appellant again reiterated that the trial court had failed to address his statutory wrongful discharge claim. The trial court disagreed and denied the motion.

### The Final Judgment

■ The trial court's December 9, 1999 judgment does not address appellant's statutory wrongful discharge claim, and the parties disagree on whether the trial court heard evidence before requesting trial briefs and recessing. There is no reporter's record before us of the November 2, 1999 proceeding, but the parties agree that the case was called for trial on that day. Although appellant contends he believed there had not been a full trial on November 2, 1999, he conceded at oral argument that he considered the judgment final for purposes of appeal. Therefore, we treat the judgment as final for purposes of appeal because the final judgment ostensibly was entered after a full trial before the court on the merits and contains a Mother Hubbard clause denying all relief not granted in the judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204–05 (Tex.2001) (holding that a Mother Hubbard clause in an order or judgment issued without a full trial does not necessarily indicate finality); *North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966) (holding that when a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, a court of appeals may presume that the trial court intended to, and did, dispose of all issues raised by the pleadings between parties and all parties legally before it).

### DART's Affirmative Defenses

■ The final judgment addresses only the appeal of the Trial Board's decision. However, appellant did not seek judicial review of that decision. Instead, appellant sued DART for wrongful discharge under section 451.001 of the labor code. The Trial Board's decision on appellant's grievance was raised by DART in connection with its affirmative defenses of election of remedies and res judicata. To prevail on these claims, DART had the burden to prove all elements of these affirmative defenses. *Liberty Mut. Ins. Co. v. Woody*, 640 S.W.2d 718, 720 (Tex.App.—Houston [1st Dist.] 1982, no writ) (affirmative defense must be pleaded and proved by the party relying on it). Because the trial court granted judgment for DART and addressed only the issue of the Trial Board's decision in the final judgment, the trial court must have necessarily concluded that DART met its burden on at least one of these affirmative defenses. We conclude, however, as a matter of law neither of these affirmative defenses was proper and neither supports the judgment.

#### 1. Election of Remedies

■ DART contended in the trial court that appellant was barred from asserting a statutory wrongful discharge claim because he elected to pursue his claim through DART's grievance and appeal process. We disagree. The doctrine of election of remedies is an affirmative defense that, under certain circumstances, bars a claimant from pursuing two inconsistent remedies. *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850–52 (Tex. 1980). The doctrine combines elements of estoppel, ratification, and unjust enrichment. *Id.* at 851. The election doctrine may constitute a bar to relief when one successfully exercises an informed choice between two or more remedies, rights, or facts that are so inconsistent as to constitute manifest injustice. *Id.* One's choice between inconsistent remedies, rights, or facts does not amount to an election that will bar further action unless the choice is made with a full and clear understanding of the problem, facts, and remedies essential to the exercise of an intelligent choice. *Id.* at 852; *see, e.g., United States Fire Ins. Co. v. Pettyjohn*, 816 S.W.2d 839, 841–42 (Tex.App.—Fort Worth 1991, no writ) (holding that the plaintiff's statement on health insurance forms that injury was not work related did not support an election because there was no evidence that the plaintiff took those actions knowing their effect or that he weighed the advantages of choosing health insurance over workers' compensation and then chose health insurance benefits). Here, there is no evidence appellant chose between filing a grievance and filing a statutory wrongful discharge claim when he filed his grievance.

■ Nothing in the Workers' Compensation Act states that once an employee completes an administrative grievance process, he is barred from filing suit under the Act. In fact, in *International Union v. Johnson Controls, Inc.*, the Texas Supreme Court held that even an adverse final arbitration decision does not preempt an action under the Act. *Int'l Union v. Johnson Controls, Inc.*, 786 S.W.2d 265 (Tex.1990). In Texas, there is a strong public policy behind encouraging parties to submit to alternative methods of dispute resolution, such as arbitration. *See* Tex. Civ.Prac. & Rem.Code Ann. § 154.002 (Vernon 1997). Under chapter 154 of the civil practice and remedies code, a binding arbitration decision is enforceable as any contract obligation. Tex.Civ.Prac. & Rem.Code Ann. § 154.027(b) (Vernon 1997). In fact, an arbitration award has the same effect as the judgment of a court of last resort. *Bailey & Williams v. Westfall*, 727 S.W.2d

86, 90 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). But despite these strong presumptions in favor of arbitration decisions, the supreme court determined that even a final arbitration decision cannot bar an employee from suing under the Act. *Johnson Controls,* 786 S.W.2d at 265.

Here, we are not dealing with a binding contractual obligation. A hearing before DART's Trial Board is not the equivalent of arbitration. *Dallas Area Rapid Transit v. Plummer,* 841 S.W.2d 870, 874 (Tex. App.—Dallas 1992, writ denied). By the terms of DART's personnel policy manual, such a hearing is merely a step in the grievance procedure whereby the employee appeals a grievance that has not been satisfactorily resolved. *Id.* Because we decline to give the Trial Board decision even the same weight as a binding arbitration decision, we hold that completing the grievance procedure did not bar appellant from later filing suit under the Act.

■ Moreover, barring appellant from filing suit under the Act would thwart the legislature's purpose in enacting the workers' compensation statute. The legislature enacted the Workers' Compensation Act to protect persons who are entitled to benefits under the Act and to prevent them from being discharged because they took steps to collect such benefits. *Carnation v. Borner,* 610 S.W.2d 450, 453 (Tex.1980) (discussing purpose of article 8307c, later codified as chapter 451 of the labor code). Here, appellant used DART's grievance procedure to complain that DART had miscalculated his lost time. He did not complain in his grievance that DART wrongfully terminated him in retaliation for filing his workers' compensation claims. Nothing in the Act or in DART's manuals required appellant to raise all claims in his grievance or forfeit those claims. Barring appellant from filing suit under section 451.001 would penalize him for using the

grievance procedure and thwart the legislature's purpose in enacting the Workers' Compensation Act. Appellant attempted to resolve his grievance internally by questioning DART's calculation of lost time. When DART's calculation was upheld by the Trial Board, appellant still had a statutory wrongful discharge claim available to him under the Act. That statutory cause of action was not barred by a grievance that merely questioned the calculation of lost time and did not allege that DART's reasons for termination were simply a pretext for discriminatory conduct.

DART relies on *City of Odessa v. Barton,* 967 S.W.2d 834 (Tex.1998), for the proposition that appellant's only recourse was a judicial review of the Trial Board's decision. DART's reliance on *Barton* is misplaced. In *Barton,* the plaintiff sued his employer for breach of an employment contract. *Id.* The trial court rendered a $150,000 judgment on the jury verdict. *Id.* The manual conferred just-cause status on certain employees, including Barton, and listed various circumstances under which those employees could be terminated. *Id.* at 835. On appeal, the City of Odessa contended that Barton was barred from suing for breach of contract because Barton accepted just-cause status from the City, and the City's employment manual limited a just-cause employee's remedies upon termination to administrative review. *Id.* The Texas Supreme Court agreed with the City, holding that Barton's only recourse in the trial court was to seek judicial review of the administrative decision because Barton accepted the City's administrative procedures as his exclusive remedy when he accepted just-cause status and the terms of the employment manual. *Id.* at 836.

■ This case is distinguishable from *Barton.* Here, appellant did not have just-cause status at DART, and there

is no evidence in the record that appellant ever agreed to relinquish his at-will employment status. For more than a century, Texas has adhered to the rule of at-will employment, which provides that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at any time, for good cause, bad cause, or no cause at all. *Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993) (per curiam); *E. Line & R.R.R. Co. v. Scott,* 72 Tex. 70, 75, 10 S.W. 99, 102 (1888). The validity of an agreement purporting to limit an employer's right to discharge the at-will employee is governed by general contract principles. *See Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). For such an agreement to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances. *Id.*

In *Barton,* the City of Odessa clearly modified Barton's at-will status by conferring just-cause status on him and listing specific circumstances under which just-cause employees could be terminated. That is not the case here. The DART employee manual does not confer just-cause status on any employee. In fact, the manual states that it was "prepared to provide standard policies designed to treat our employees as a valuable resource in a fair and equitable manner" but that "[n]othing contained in this manual is intended to be, nor should be construed as a guarantee that employment ... will be continued for any period of time." This language clearly maintained the at-will status of DART's employees. *See Dutschmann,* 846 S.W.2d at 283 (concluding that a disclaimer in the Federal Express employee handbook, which stated the handbook was not a contract and did not create contractual rights, negated any implication

that the manual placed a restriction on the at-will employment relationship). Moreover, unlike the manual in *Barton,* the DART manual does not contain a list of the specific circumstances under which an employee may be terminated. Appellant was clearly an at-will employee when he was terminated. Therefore, pursuing a grievance to completion did not bar appellant from later filing a statutory wrongful discharge claim against DART.

### 2. Res judicata

The doctrine of res judicata addresses the conclusive effects of judgments. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). The general principle of res judicata is simple: a party may not dispute a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction in a prior suit as a ground of recovery or defense in a later suit between the same parties. *Williams v. Nat'l Mortgage Co.,* 903 S.W.2d 398, 402 (Tex.App.—Dallas 1995, writ denied). Res judicata will not apply where different facts or events exist which lead to a second lawsuit. *Franklin v. Rainey,* 556 S.W.2d 583, 585 (Tex.Civ. App.—Dallas 1977, no writ). The doctrine of res judicata applies only when the following elements exist: identity of parties, issues, subject matter, relief sought, and cause of action. *Id.*

In this case, appellant's grievance was not heard before a court of competent jurisdiction and was based on separate and distinct facts from his statutory wrongful discharge claim. In his grievance, appellant contended DART miscalculated his lost time, whereas in his lawsuit, appellant contended DART fired him in retaliation for filing workers' compensation claims. For these reasons, the doctrine of res judicata does not apply to these facts.

DART, once again relying on *Barton*, contends appellant's statutory cause of action is barred by res judicata because its personnel policy manual limits appellant's remedies to judicial review of the Trial Board's decision. Specifically, DART contends the manual's language that the Trial Board's decision is "final and binding" effectively limits an employee's remedies to judicial review of the Trial Board's decision. DART's reliance on its personnel policy manual and *Barton* is once again misplaced. The provision in DART's manual is not analogous to the administrative remedies provision in the City of Odessa's employment manual. In *Barton*, the City of Odessa's employment manual specifically stated that an employee's exclusive remedy following termination was an administrative review process. *Barton*, 967 S.W.2d at 835. Here, DART's manual simply states that the Trial Board's decisions are "final and binding." It does not say that an employee's exclusive remedy following termination is the grievance process. Moreover, unlike in *Barton*, there is no evidence in the record that appellant accepted DART's grievance process as his exclusive remedy. Appellant's statutory claim was not barred by the doctrine of res judicata.

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of probably caused the rendition of an improper judgment. TEX.R.APP.P. 44.1(a)(1). Here, neither of DART's affirmative defenses can support the judgment. This undoubtedly caused the rendition of an improper judgment. Moreover, appellant's statutory wrongful discharge claim

was not properly heard by the trial court. Accordingly, we reverse and remand the trial court's final judgment on appellant's statutory wrongful discharge claim. Because the final judgment failed to address appellant's statutory wrongful discharge claim, we need not address whether the substantial evidence standard applies to that claim. Accordingly, we need not address appellant's first, second, and third points of error.

### Attorney's Fees

■ In his fourth point of error, appellant contends the trial court erred by dismissing appellant's claim for attorney's fees under section 451.002 of the labor code. We disagree. A prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex.1999). Section 451.002 does not provide for attorney's fees, and appellant does not contend that an agreement between the parties authorized recovery of attorney's fees. Instead of specifically providing for attorney's fees, section 451.002 simply states that "[a] person who violates section 451.001 is liable *for reasonable damages* incurred by the employee as a result of the violation." TEX.LAB.CODE ANN. § 451.002 (Vernon 1996) (emphasis added). In *Holland*, the supreme court held that attorney's fees were not recoverable as "reasonable damages" under section 451.002 of the labor code. *Holland*, 1 S.W.3d at 95. Because section 451.002 does not provide for attorney's fees, appellant is not entitled to recover his attorney's fees.[4] We overrule appellant's fourth point of error.

---

4. Appellant relies on *Texas Education Agency v. Leeper*, 893 S.W.2d 432 (Tex.1994), to support his contention that he is entitled to recover attorney's fees. However, *Leeper* in-

volved a claim brought under the Texas Uniform Declaratory Judgments Act (TUDJA). Because appellant brought his action under section 451.001 of the labor code, not under

### Exemplary Damages

In his fifth point of error, appellant contends the trial court erred by dismissing appellant's claim for exemplary damages under section 451.002. Specifically, appellant contends that because the Texas Supreme Court has held that punitive damages are envisioned by the legislature as within the ambit of "reasonable damages suffered by an employee," and therefore available as damages under section 451.002, he is entitled to assert a claim for exemplary damages. *Azar Nut Co. v. Caille*, 734 S.W.2d 667, 669 (Tex.1987). We disagree. Although the supreme court upheld an award of punitive damages in *Caille*, that holding does not apply in a case involving a political subdivision such as DART.

This Court has previously held that DART is a governmental entity. *Plummer*, 841 S.W.2d at 875; *Davis v. Mathis*, 846 S.W.2d 84, 87 (Tex.App.—Dallas 1992, no writ). We now hold that DART is a political subdivision as well. When a governmental entity is sued under the Tort Claims Act, exemplary damages cannot be assessed against that entity. TEX.CIV. PRAC. & REM.CODE ANN. § 101.024 (Vernon 1997). However, when a governmental entity violates section 451.001 of the labor code, it "is liable for reasonable damages incurred by the employee as a result of the violation." TEX.LAB.CODE ANN. § 451.002(a) (Vernon 1996). Those "reasonable damages" are limited by the Tort Claims Act only if that entity is the state, a state agency, an employee of the state, a

political subdivision, or an employee of a political subdivision. *See* TEX.LAB.CODE ANN. §§ 501.002(d), 504.002(c) (Vernon 1996). Section 504.001(3) defines "political subdivision" as "a county, municipality, special district, school district, junior college district, housing authority, community center for mental health and mental retardation services, established under Subchapter A, Chapter 534, Health and Safety Code, or *any other legally constituted political subdivision of the state.*" TEX.LAB. CODE ANN. § 504.001(3) (Vernon 1996) (emphasis added). Because transit authorities are not explicitly listed in this definition, it might appear that transit authorities like DART are not political subdivisions for purposes of the Workers' Compensation Act. However, because of DART's operating procedures and inherent powers, DART is a legally constituted political subdivision of the state.

The legislature first authorized the creation of regional transportation authorities in 1979. *See* TEX.REV.CIV.STAT. ANN. art. 1118y, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex.Gen.Laws 1025, 1870–71,[5] (current version at TEX.TRANSP.CODE ANN. §§ 452.001–452.720 (Vernon 1999)).[6] A regional transportation authority is a public political entity and corporate body of perpetual succession that exercises public and essential governmental functions. TEX. TRANSP.CODE ANN. § 452.052 (Vernon 1999). The characterization of transportation authorities as political entities supports the

---

the TUDJA, *Leeper* is inapplicable to this case.

**5.** *See* Act of May 26, 1979, 66th Leg., R.S., ch. 683, 1979 Tex.Gen.Laws 1610, 1610–36, *repealed by* Act of May 8, 1997, 75th Leg., R.S., ch. 165, § 30.30(b), 1997 Tex.Gen.Laws 327, 581.

**6.** In DART's first amended answer, DART asserted that it was a regional transportation authority created pursuant to chapter 452 of the transportation code. The record contains no evidence to dispute this contention. For purposes of this appeal, we assume without deciding that DART was created under chapter 452 of the transportation code as a regional transportation authority.

conclusion that transportation authorities are political subdivisions of the state. This conclusion is further supported by DART's operating procedures and various powers. Political subdivisions have jurisdiction over only a portion of the state, the power to assess and collect taxes, and members of the political subdivision's governing body are elected in local elections or appointed by locally elected officials. *Guar. Petroleum Corp. v. Armstrong,* 609 S.W.2d 529, 531 (Tex.1980) (holding that a navigation district is a political subdivision, not a department, board, or agency of the state). DART meets all of those criteria: DART has jurisdiction over only a portion of the state, members of its board are appointed by locally elected officials, and the executive committee has the authority to impose a sales and use tax following a rate approval in an election. TEX.TRANSP.CODE ANN. § 452.056(a)(1) (Vernon 1999) (an authority may acquire, construct, develop, plan, own, operate, and maintain a public transportation system in the territory of the authority); TEX.TRANSP.CODE ANN. § 452.572 (Vernon 1999) (members of a subregional board are appointed by the governing bodies of the municipalities in the subregional authority); TEX.TRANSP. CODE ANN. § 452.401 (Vernon 1999) (the executive committee may impose a sales and use tax after the rate is approved at an election).

Moreover, the legislature considers similar transportation authorities to be political subdivisions. For example, the re-

visor's notes for section 451.401 of the transportation code indicate that the legislature considers metropolitan rapid transit authorities to be political subdivisions. Article 1118x, which authorized the creation of metropolitan rapid transit authorities, explicitly stated that authorities created under that article could not levy or collect any tax prohibited by the Texas Constitution. *See* TEX.REV.CIV.STAT.ANN. art. 1118x, *repealed by* Act of May 1, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen.Laws 1025, 1870–71,[7] (current version at TEX.TRANSP.CODE ANN. §§ 451.001– 451.665 (Vernon 1999)). But the revised law simply states that "[a]n authority may impose any kind of tax except an ad valorem property tax." TEX.TRANSP.CODE ANN. § 451.401 (Vernon 1999). Revisor's note one indicates that the revised law removed the language relating to taxes prohibited by the constitution "as unnecessary because *no political subdivision* may impose a tax prohibited by the constitution." TEX. TRANSP.CODE ANN. § 451.401, rev. note 1 (Vernon 1999) (emphasis added). Metropolitan rapid transit authorities, like regional transportation authorities, are public political entities and corporate bodies of perpetual succession that exercise public and essential governmental functions. TEX. TRANSP.CODE ANN. § 451.052 (Vernon 1999). Because the Legislature considers metropolitan rapid transit authorities to be political subdivisions, it follows that similarly organized regional transportation authorities are also political subdivisions.[8]

---

7. *See* Act of May 15, 1973, 63d Leg., R.S., ch. 141, 1973 Tex.Gen.Laws 302, 302–15, *repealed by* Act of May 8, 1997, 74th Leg., R.S., ch. 165, § 30.26(b), 1997 Tex.Gen.Laws 327, 579.

8. Section 305.026(b)(3)(G) of the government code further supports the conclusion that an entity may be both a governmental entity and a political subdivision. That provision states that " 'political subdivision' includes a special

district created under the constitution or laws of this state, including: ... any other governmental entity that embraces a geographic area within a definite boundary and exists for the purpose of discharging functions of government and possesses authority for subordinate self-government through officers selected by it." TEX.GOV'T CODE ANN. § 305.026(b)(3)(G) (Vernon 1998).

Accordingly, we hold that DART is a political subdivision of the state as well as a governmental entity. As a political subdivision, any damages assessed against DART under the Workers' Compensation Act are limited by what is authorized under the Tort Claims Act. *See* TEX.LAB.CODE ANN. § 504.002(c) (Vernon 1996). Because the Tort Claims Act does not authorize exemplary damages, the trial court did not err by granting DART partial summary judgment as to appellant's claim for exemplary damages. We overrule appellant's fifth point of error.

For the foregoing reasons, we affirm that portion of the trial court judgment granting partial summary judgment in favor of DART on appellant's claims for attorney's fees and exemplary damages, and reverse and remand the remainder of the trial court's judgment on appellant's statutory wrongful discharge claim.

### SUPPLEMENTAL OPINION ON MOTION FOR REHEARING

We have before us two separate motions: Appellee's Request for the Court to Take Judicial Notice [1] and Appellee's Motion for Rehearing. The Court's June 15, 2001 opinion and judgment in this cause stand unchanged. We issue this opinion to supplement our original opinion in this cause and to address each of appellee's motions.

### DART's Request for the Court to Take Judicial Notice

■ ■ Appellee, Dallas Area Rapid Transit (DART), has requested this Court to take judicial notice of sections 8.3 and 8.4 of its personnel policy manual. Because these portions of the manual were not before the trial court, they would not properly be before us even if we took judicial notice of them. We decline to take judicial notice of sections 8.3 and 8.4 of the DART personnel policy manual. However, even if those sections were properly before us, the result in this case would still be the same. DART contends these sections of the manual bring this case squarely under *City of Odessa v. Barton*, 967 S.W.2d 834 (Tex.1998). We disagree. In *Barton*, in addition to conferring just-cause status on its employees, the manual provided an all-inclusive list of circumstances under which an employee could be terminated. *Id.* at 835. Neither of those factors is present in this case. In our original opinion, we held that the DART manual does not confer just-cause status on any employee and "does not contain a list of specific circumstances under which an employee may be terminated." DART contends sections 8.3 and 8.4 contain a list comparable to the one found in the City of Odessa manual, which detailed the specific circumstances under which an employee could be terminated. We disagree. Sections 8.3 and 8.4 are simply a non-inclusive list of conduct that *may* subject an employee to discipline or discharge. DART is still free to terminate an employee for reasons not listed in these sections. That was not the case in *Barton*. Consequently, this case is distinguishable from *Barton*. We deny DART's request for this Court to take judicial notice of sections 8.3 and 8.4 of its personnel policy manual, and even if we were to take judicial notice of them, they would not properly be before us in this appeal because those sections were not before the trial court at the time of its ruling. Moreover, even if they were properly before us, we would conclude that *Barton* is distinguishable.

---

1. This motion is erroneously titled "Appellant's Request for the Court to Take Judicial Notice."

## DART's Motion for Rehearing

DART contends in its motion for rehearing that this Court erred in holding that the trial court was incorrect in applying the substantial evidence test to appellant's lawsuit because (1) *Barton* is applicable and controlling in this case, (2) the doctrine of election of remedies bars appellant's statutory wrongful discharge claim, and (3) the doctrine of res judicata bars appellant's statutory wrongful discharge claim. These arguments lack merit.

■ In its first point on rehearing, DART contends this case falls squarely within *Barton,* requiring us to affirm the trial court's judgment. For the reasons set out above concerning DART's motion to take judicial notice, as well as the reasons that follow, we disagree and conclude *Barton* is distinguishable. Unlike Barton, appellant did not have just-cause status at DART, and there is no evidence in the record that appellant agreed to relinquish his at-will employment status. DART concedes that DART employees are generally at-will employees, but contends section 8.8A of the personnel policy manual shows that, by appealing his termination to the Trial Board, appellant was moved from the normal at-will status into a just-cause status. Section 8.8A describes DART's grievance and appeal procedure and provides that employees may present individual grievances regarding disciplinary action, discharge, or demotion "without just cause." We construe DART's argument to be that because section 8.8A uses the words "without just cause," that section conferred just-cause status on appellant when he completed his grievance procedure. This argument lacks merit.

■ In an employment-at-will situation, an employee policy handbook or manual does not, of itself, constitute a binding contract for the benefits and policies stated unless the manual uses language clearly indicating an intent to do so. *Gamble v. Gregg County,* 932 S.W.2d 253, 255 (Tex.App.—Texarkana 1996, no writ). For an employment manual to alter the at-will relationship, it must specifically and expressly limit the relationship and curtail the employer's right to terminate the employee. *Almazan v. United Servs. Auto. Ass'n, Inc.,* 840 S.W.2d 776, 780–81 (Tex. App.—San Antonio 1992, writ denied). In particular, where there is no express agreement limiting the employer's right to unilaterally amend or withdraw the handbook, no modification of the employee's at-will status will be found. *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex. App.—Corpus Christi 1982, no writ).

Here, unlike in *Barton,* the manual does not contain express language that appellant could be discharged only for just cause. The manual's use of the term "just cause" in its provisions detailing the grievance and appeal procedures does not specifically or expressly limit the employment relationship or curtail DART's right to terminate its employees. There is no evidence in the record that appellant believed this employment manual or his completion of the grievance procedures altered his at-will employment status. Moreover, this manual did not create a contract between DART and its employees. DART retained the right to change the manual at any time, and section 1.2(A) specifically states that "[n]othing contained in this manual is intended to be, nor should be construed as a guarantee that employment or any benefit program will be continued for any period of time." As such, appellant's at-will employment status was not modified by the manual. As we originally held, based on this record, appellant was clearly an at-will employee when he was terminated. As an at-will employee, appellant's decision to complete DART's optional grievance procedure did not bar him from later filing

suit under the Workers' Compensation Act.

In its second point, DART contends the doctrine of election of remedies bars appellant's wrongful discharge claim because, based on the personnel policy manual, appellant elected to proceed through DART's grievance procedure in lieu of filing a lawsuit. There is no evidence in the record before us indicating appellant elected to lose his at-will employment status when he appealed his termination to the Trial Board. Moreover, nothing in the record indicates that completing a grievance procedure bars an employee from pursuing a claim under the Workers' Compensation Act. As originally discussed, nothing in the DART manual says an employee's exclusive remedy following termination is the grievance process, and there is no evidence appellant accepted DART's grievance process as his exclusive remedy. Appellant's statutory wrongful discharge claim was not barred by the election of remedies doctrine.

We will not address DART's third point, that appellant's wrongful discharge claim is barred by res judicata, because our original opinion adequately addresses DART's arguments.

We deny DART's request for this Court to take judicial notice, and we deny DART's motion for rehearing.