**DALLAS AREA RAPID TRANSIT,**
Appellant

v.

**AMALGAMATED TRANSIT UNION
LOCAL NO. 1338, Appellee.**

No. 05–05–00241–CV.

Court of Appeals of Texas,
Dallas.

Oct. 14, 2005.

Harold R. McKeever, Jr., Dallas Area Rapid Transit, Dallas, for appellant.

Hal K. Gillespie, Gillespie, Rozen, Watsky & Motley, P.C., Dallas, for appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

**OPINION**

Opinion by Justice WHITTINGTON.

Amalgamated Transit Union Local No. 1338 sued Dallas Area Rapid Transit for violations of a general grievance resolution. DART filed a plea to the jurisdiction, claiming governmental immunity. The trial judge denied the plea. DART appeals, arguing in a single issue that the trial court did not have jurisdiction over ATU 1338's suit. We affirm the trial court's order.

BACKGROUND

ATU 1338 is a labor organization representing employees of DART, a regional transportation authority. *See* TEX. TRANSP. CODE ANN. §§ 452.001–.720 (Vernon 1999 & Supp.2004–05). In 2001, ATU 1338 filed a general group grievance on behalf of its bargaining unit members. In June 2002, DART and ATU 1338 entered into a general grievance resolution agreement to resolve the dispute. The resolution addressed salaries and wages for DART employees as well as other issues. In this lawsuit, ATU 1338 alleges DART breached the resolution agreement by failing to implement the pay increase included in the resolution and taking other unilateral actions inconsistent with the resolution. DART filed a plea to the jurisdiction, claiming the trial court lacked subject matter jurisdiction over ATU 1338's claims on the grounds of governmental immunity. ATU 1338 argued in response that state governmental immunity law was preempted by federal law. The trial judge denied DART's plea.

STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of an action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a trial court has subject matter jurisdiction is a question of law to be reviewed de novo. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). In performing this review, we do not look to the merits of the plaintiff's case but consider only the pleadings and the evidence pertinent to the jurisdictional inquiry. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002) (citing *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex.2001)). Although federal

preemption is not usually a jurisdictional question, *see Mills v. Warner Lambert Co.,* 157 S.W.3d 424, 427 (Tex.2005) (federal preemption usually defense to plaintiff's suit but does not ordinarily deprive state court of jurisdiction), here it is asserted not to deprive the state court of jurisdiction but to maintain it despite DART's plea.

### DISCUSSION

■ DART argues the trial court did not have jurisdiction for five reasons. First, DART argues its status as a governmental entity provides it with immunity from ATU 1338's lawsuit. Second, DART argues it has not waived its immunity. Third, DART asserts it has not taken affirmative action to invoke the trial court's jurisdiction. Fourth, DART maintains federal law does not preempt state law to confer jurisdiction on the trial court. Fifth, DART argues ATU 1338's sole redress is through an administrative grievance process. Our resolution of the fourth argument is dispositive of the appeal. *See* TEX.R.APP. P. 47.1. DART's first, second, third, and fifth arguments are premised upon governmental immunity. We conclude the federal Urban Mass Transportation Act (UMTA) preempts state governmental immunity law in this case. *See* 49 U.S.C.A. § 5333(b) (West Supp.2005) (formerly designated as section 13(c) and referred to as section 13(c) in case law).

■ "If a state law conflicts with federal law, it is preempted and has no effect." *Great Dane Trailers, Inc. v. Estate of Wells,* 52 S.W.3d 737, 743 (Tex.2001); *see also* U.S. CONST. art. VI, cl. 2 ("The laws of the United States are the 'supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding' ") (quoted in *Great Dane Trailers,* 52 S.W.3d at 743). Preemption may be express or implied.

*See Great Dane Trailers,* 52 S.W.3d at 743. Federal law may impliedly preempt state law if it is impossible for a private party to comply with both state and federal requirements or if state law obstructs accomplishing and executing Congress's full purposes and objectives. *Great Dane Trailers,* 52 S.W.3d at 743; *see also Geier v. Am. Honda Motor Co.,* 529 U.S. 861, 882, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (because rule of state tort law upon which plaintiffs sued would have stood "as an obstacle to the accomplishment and execution of" important objectives of federal motor vehicle safety standard, it was preempted).

ATU 1338 contends application of state governmental immunity law would thwart Congress's intent and the purposes of the UMTA. The United States Supreme Court discussed the purposes of the UMTA in *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982). At a time when many private transportation companies across the country were in "precarious financial condition," the UMTA "was designed in part to provide federal aid for local governments in acquiring failing private transit companies so that communities could continue to receive the benefits of mass transportation despite the collapse of the private operations." *Jackson Transit Auth.,* 457 U.S. at 17, 102 S.Ct. 2202. Congress was also aware, however, "that public ownership might threaten existing collective-bargaining rights of unionized transit workers employed by private companies." *Jackson Transit Auth.,* 457 U.S. at 17, 102 S.Ct. 2202. The Court continued,

If, for example, state law forbade collective bargaining by state and local government employees, the workers might lose their collective-bargaining rights

when a private company was acquired by a local government. To prevent federal funds from being used to destroy the collective-bargaining rights of organized workers, Congress included § 13(c) in the Act. Section 13(c) requires, as a condition of federal assistance under the Act, that the Secretary of Labor certify that "fair and equitable arrangements" have been made "to protect the interests of employees affected by [the] assistance." The statute lists several protective steps that must be taken before a local government may receive federal aid.... The protective arrangements must be specified in the contract granting federal aid.

*Jackson Transit Auth.*, 457 U.S. at 17–18, 102 S.Ct. 2202 (citations omitted).

The *Jackson Transit Authority* Court noted Congress's concern that state law may forbid collective bargaining by state and local government employees, and thus "workers might lose their collective-bargaining rights when a private company was acquired by a local government." *See Jackson Transit Auth.*, 457 U.S. at 17, 102 S.Ct. 2202. In Texas, state law does prohibit collective bargaining by government employees. *See* TEX. GOV'T CODE ANN. § 617.002 (Vernon 2004) (official of state or political subdivision may not enter into collective bargaining contract with labor organization regarding wages, hours, or conditions of employment of public employees; any such contract void). DART, however, is a party to an "Arrangement Pursuant to Section 13(c) of the Urban Mass Transportation Act of 1964," under which DART agreed the "existing rights of employees covered by this Arrangement to present grievances concerning their wages, hours of work, or conditions of work, individually or through a representative ... shall be preserved and continued." *Arrangement Pursuant to Section 13(c) of the Urban Mass Transportation Act of*

*1964*, ¶ 4. DART makes annual certifications and assurances of its compliance with federal law and regulations to the Federal Transit Authority to obtain federal assistance, and a significant portion of DART's annual budget is derived from federal funds. Thus, the 13(c) arrangement between DART and ATU 1338 is consistent with Congress's intent "to prevent federal funds from being used to destroy the collective-bargaining rights of organized workers." *See Jackson Transit Auth.*, 457 U.S. at 17, 102 S.Ct. 2202.

While the issue in *Jackson Transit Authority* was whether Congress intended to create federal causes of action for breaches of section 13(c) agreements and collective bargaining contracts, *see Jackson Transit Auth.*, 457 U.S. at 21, 29, 102 S.Ct. 2202, the Court noted "it is reasonable to conclude that Congress expected the § 13(c) agreement and the collective-bargaining agreement, like ordinary contracts, to be enforceable by private suit upon a breach." *Jackson Transit Auth.*, 457 U.S. at 20–21, 102 S.Ct. 2202. The Court concluded the contracts at issue were to be governed by state, not federal, law. *See Jackson Transit Auth.*, 457 U.S. at 29, 102 S.Ct. 2202. The Court explained, "Congress designed § 13(c) as a means to accommodate state law to collective bargaining, not as a means to substitute a federal law of collective bargaining for state labor law." *Jackson Transit Auth.*, 457 U.S. at 28, 102 S.Ct. 2202.

We have also noted "arrangements under section 13(c) of the Urban Mass Transportation Act are not collective bargaining contracts," but are "contracts, albeit contracts required by federal statute." *Dallas Area Rapid Transit v. Plummer*, 841 S.W.2d 870, 874 (Tex.App.-Dallas 1992, writ denied), *abrogated in part on other grounds by Tex. Educ. Agen-*

cy v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994) (Texas Uniform Declaratory Judgment Act waives governmental immunity for awards of attorneys' fees). Section 13(c) protective arrangements are "valid and enforceable in state courts." *Plummer*, 841 S.W.2d at 874. "Employees covered by a section 13(c) agreement, or their union, may bring a contract action in state court to enforce the agreement." *Plummer*, 841 S.W.2d at 874 (citing *Jackson Transit Auth.*, 457 U.S. at 29 n. 13, 102 S.Ct. 2202).

DART argues ATU 1338's claim is not for breach of a section 13(c) arrangement, but only for breach of the resolution agreement. We disagree. The general grievance resolution agreement recites that ATU 1338's grievance was addressed "in conformity with Section 8.10 of the DART Hourly Employment Manual and Section 617.005 of the Government Code and DART's [Section] 13(c) Capital Arrangement certified by the Department of Labor on September 30, 1991." As we noted in *Plummer*, "DART's personnel policy manual contains the grievance procedure properly promulgated pursuant to section 13(c) and, as part of the section 13(c) agreement, is binding on DART." *Plummer*, 841 S.W.2d at 874. We concluded in *Plummer* the trial court "was correct in finding that DART has a contractual duty to implement the Trial Board's award and that failing to do so constitutes a breach of that duty." *Plummer*, 841 S.W.2d at 874. As in *Plummer*, ATU 1338 "may bring a contract action in state court to enforce the agreement." *See Plummer*, 841 S.W.2d at 874.

Assuming state law provides that DART, as a governmental entity, is immune from suit, this immunity would obstruct accomplishing and executing Congress's full purposes and objectives under the UMTA. *See Great Dane Trailers*, 52

S.W.3d at 743; *Geier*, 529 U.S. at 882, 120 S.Ct. 1913. The UMTA, as interpreted in *Jackson Transit Authority*, is clear: state law is to control labor relations between local governments and unionized transit workers, as long as the workers' collective-bargaining rights are preserved before a local government receives federal aid. *See Jackson Transit Auth.*, 457 U.S. at 17, 27, 102 S.Ct. 2202. Congress designed section 13(c) of the UMTA "as a means to accommodate state law to collective bargaining." *Jackson Transit Auth.*, 457 U.S. at 27, 102 S.Ct. 2202. Although section 13(c) may be narrowly drafted to minimize its effects on state labor law, Congress's clear intent was to preserve collective-bargaining rights. Where state immunity law would preclude enforcement of the rights preserved under section 13(c), Congress's objectives could not be accomplished. Therefore, state immunity law "is preempted and has no effect." *See Great Dane Trailers*, 52 S.W.3d at 743.

█ Not all conflicts between federal statutes and state immunity laws result in preemption. The United States Supreme Court held the State of Maine was immune from a suit by its employees under the Federal Fair Labor Standards Act because Congress cannot abrogate a state's sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 754, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) (applying sovereign immunity pursuant to Eleventh Amendment of United States Constitution). The rule in *Alden*, however, does not apply to DART in this case because DART is not an "arm of the state." *See Alden*, 527 U.S. at 756, 119 S.Ct. 2240 (sovereign immunity bars suits against State or "arm of the state" but not lesser governmental entity); *Williams v. Dallas Area Rapid Transit*, 242 F.3d 315, 322 (5th Cir.) (DART not "arm of the state" entitled to assert federal Eleventh Amendment immunity in case under Age

Discrimination in Employment Act), *cert. denied,* 534 U.S. 1042, 122 S.Ct. 618, 151 L.Ed.2d 540 (2001); *see also Hoff v. Nueces County,* 153 S.W.3d 45, 49 (Tex. 2004) (per curiam) (Eleventh Amendment immunity does not bar suit against "lesser entities" such as county). As noted in *Alden,* "certain limits are implicit in the constitutional principle of sovereign immunity;" it "does not bar all judicial review of state compliance with the Constitution and valid federal law." *Alden,* 527 U.S. at 755, 119 S.Ct. 2240. Here, state immunity law does not bar judicial review of ATU 1338's claims.

We affirm the trial court's denial of DART's plea to the jurisdiction.